### DILLON v. HOLCOMB et al.
### No. 9379.

Circuit Court of Appeals, Fifth Circuit.
March 19, 1940.

Rehearing Denied April 24, 1940.

Albert T. Hughes, Jr., and Sidney M. Cook, both of Shreveport, La., for appellant.

Pike Hall and Marion K. Smith, both of Shreveport, La., for appellees.

Before HOLMES and McCORD, Circuit Judges, and MIZE, District Judge.

HOLMES, Circuit Judge.

The appellant, who was plaintiff below, appeals from a judgment partially in his favor, because the basis of an accounting under an oil lease awarded against the appellees was for an amount less than claimed by him. Involved here are mineral rights in approximately ten acres of land. The appellees, as to four acres thereof, are the holders of such rights under a lease from appellant, and, as to approximately six acres, are the holders under a lease from other parties. The latter lease provided for only the usual ⅛ royalty, but the appellant's lease provided, in addition to the usual ⅛ royalty, for the payment of an overriding royalty of 1/16 of ⅞ as long as more than 3,000 barrels per month were produced under the lease, which was reduced to 1/32 when production fell below that figure, with a further payment of $7,500 to be made only from oil produced out of another 1/16 of the working interest.

This controversy is with reference to the overriding royalty and oil payment claimed by appellant under his said lease from oil produced by appellees from a well on the 6-acre tract. The theory upon which he recovered below was that the two tracts had been pooled for the purpose of obtaining a permit to drill under the conservation laws of Louisiana. The district court held that he should be paid his proportionate share of the stipulated royalty (i. e. 4/10 of ⅛) provided for in the lease of the 6-acre tract. The appellant complains here only of the fact that the wrong lease was used wherein to determine the consideration to be paid to

him. This contention presents the proposition that, in the absence of a modifying agreement, when separate tracts are pooled under conservation laws for purposes of oil development, each lessor is to be paid the consideration named in his lease, rather than that named in the lease of the particular tract on which the well is located.[1]

Since the appellant did not enter into any pooling agreement with the owners of the 6-acre tract, upon which the permit to drill was granted and from which the oil was actually produced, the appellees deny that the 4 acres in appellant's lease were pooled; but the court below found against appellees on this point.[2] There is no question here of the power of the State of Louisiana, under its conservation laws, to pool separate interests without the consent of the owners. The appellees, of their own volition, pooled the two tracts for the purpose of producing oil, and the appellant acquiesces in such pooling by seeking payment under his lease on the basis that the same actually took place.

■ In relation to royalties, overriding royalties, and oil payments, the authority of the conservation commissioner or of any lessee to pool or allocate acreage is subject to the terms of the contract of lease existing between the lessor and lessee. The appellant has never consented to a reduction of the amounts to be paid to him under his lease contract, and is entitled to an accounting upon the basis of the royalties and oil payments therein named. The permit to drill in this case was upon ten acres.

The effect of what was done under the permit to drill for oil was to unite the two tracts and create the presumption that production from the well to be drilled would be drawn from a single pool, $\frac{4}{10}$ of which would be supplied from appellant's land.

The judgment of the district court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[1] In its conclusions of law, the district court said (R. p. 42): "Undoubtedly, plaintiff had the right to exact from his own lessee the full measure of his contract, as to royalties, with respect to any production from wells drilled on his own lands. The question is, can he insist upon the application of this stipulation to production from other and adjoining lands, the ownership of which is in third persons, simply because his lessee, under the circumstances of this particular case and the limitations of the permit by the Conservation Department, found it necessary to pool a small area, 4 acres with the 6 outside, to gain a permit to drill upon the latter? I think not."

For the opinion of the district court, a plat showing the land, and a further statement of facts in this case, see Dillon v. Holcomb, D. C., 28 F.Supp. 938.

[2] "In applying for the permit for the Zylkes-Smith well, Holcomb and Thomason, being the lessees of the entire Dillon tract of 34 acres, indicated to the department that they would include a strip of 4 acres off the South end of the Dillon tract, marked on the Sketch below as '4:00 ac, allotted to the Smith No. 1.'

* * * * * * * *

" * * * The lands adjoining the Zylkes-Smith 6 acres on the South and East were being considered for pooling with other owners or lessees, and the Conservation Department recommended the issuance and actually issued its permit to Holcomb and Thomason on the basis of 4 acres off the South end of the lease from Dillon, plus the Zylkes-Smith tract, or a total of approximately 10 acres. The well was drilled and a full $\frac{1}{8}$ royalty has been paid to the Zylkes-Smith group, but Holcomb and Thomason offered to settle with Dillon by paying him $\frac{4}{10}$ of a $\frac{1}{8}$ royalty to cover the 4 acres out of his lease, which he declined." Trial Court's findings of fact, p. 40 of record.