No. 48,480

B. W. KLIPPEL, JR., (Plaintiff), *Appellant,* v. PETER J. BEINAR, (Defendant), *Appellee,* HAPPY WILDCAT OIL COMPANY, a Missouri corporation, (Defendant), and B. W. KLIPPEL, JR., (Plaintiff), *Appellant,* v. JOSEPH W. VOWELL and DONALD A. HIGH, co-partners d/b/a H-V Oil Company, a partnership, (Defendants), *Appellees.*

(567 P.2d 867)

Opinion filed July 11, 1977.

*J. D. Conderman,* of Conderman & Talkington, of Iola, argued the cause and was on the brief for the appellant.

*Charles E. Henshall,* of Henshall & Pennington, of Chanute, and *H. Carroll Bayler,* of Louisville, Illinois, argued the cause and were on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This appeal is from an order of the trial court granting motions for summary judgments in favor of defendants, Peter J. Beinar, Joseph W. Vowell and Donald A. High. Plaintiff B. W. Klippel, Jr. appeals.

Appellant Klippel was an oil operator-producer conducting development, production, maintenance and marketing operations on twelve oil leases in Woodson County under oil and gas lease operating agreements covering what is referred to as the East Rose Field Unit.

Appellant filed separate actions against Peter J. Beinar, et al.,

and against Joseph W. Vowell and Donald A. High. The issues in the separate actions are quite similar and the actions were consolidated for trial and remain consolidated for purposes of this appeal.

In the petitions Klippel alleges that defendant Beinar is the owner of an oil and gas lease covering the South Half of the North Half of the Northeast Quarter (S ½ N ½ NE ¼) of Section 21, Township 26 south, Range 16 east, and that Vowell and High are the owners of an oil and gas lease covering the South Third of the East Half of the Southeast Quarter (S ⅓ E ½ SE ¼) of Section 21, Township 26 south, Range 16 east, all in Woodson County. He alleges that both leases are in a unitized area and subject to operating agreements held by him. He further alleges that by reason of expenditures, charges, credits and receipts allocable to the respective unitized tracts the defendants are individually indebted to him in stated amounts as shown in itemized statements attached to the respective petitions.

In these itemized statements, after arriving at the total operator's cost in the East Rose Field Unit, Klippel lists the twelve leases participating in the unit, names the original lessors and the present lessees including the respective lessee-defendants, assigns a "unit participating factor" to each lease and thereby arrives at the lessee's respective share of the total operator's costs in the field unit for the period covered.

Generally it can be said that the defendants in their answers admitted that they owned leases covering the respective tracts of land. Their ownerships were asserted under assignments of leases. They denied that their leases were subject to the burdens of unitization and alleged the operating agreements on which plaintiff based his claims for unit operating expenses were void because of fraud, misrepresentation and unconscionability. In addition to the answers the defendants filed counterclaims asserting that the assignments of leases conveyed nothing to them and that the plaintiff had wrongfully demanded and had been paid large sums for operating expenses not incurred on defendants' leases. Defendants prayed for accountings and for return of payments wrongfully received by plaintiff plus damages and costs.

We are not concerned with these counterclaims since they were not determined when the summary judgments were entered. They are pending in the trial court.

In the motions for summary judgments defendants alleged that the oil and gas leases referred to in plaintiff's petitions had expired by their terms, that the operating agreements under which plaintiff claimed had expired with the termination of the leases and that the agreements could no longer be enforced because of lack of mutuality and unconscionability.

At the hearing on the motions for summary judgments the parties furnished various copies of documents to the court. These included copies of leases, court records in a quiet title action involving the lease interests, the assignments of the leases and of the participating interests in the East Rose Field Unit to Beinar, Vowell and High, the operating agreements and certain orders signed by Beinar and by High as president of Reddy-Kay Drilling Company, a corporation, addressed to an oil purchasing company denominated "Working Interest Division Order, Confirmation of Unitization Agreement, Appointment of Common Agent."

In addition to this documentary evidence the record on appeal contains portions of depositions by Peter J. Beinar, defendant, and B. W. Klippel, Jr., plaintiff, and affidavits of two individuals with reference to unitization of the TEC Unit effective October 1, 1966, and mentioning a previous affidavit filed in 1967. The deposition of plaintiff indicates that the East Rose Field Unit was producing 30 barrels of oil per day and the break even point to cover operating expenses would be 75 barrels of oil per day. This was tertiary recovery and we find nothing in the record as to when primary or secondary recovery of oil began.

In what is referred to by the parties as the unitizing lease to Owen Snow Petroleum Engineering Company, executed in 1966, the parties to that lease acknowledge unitization and refer to the total unit acreage as the TEC Unit. There is nothing in the record to indicate when this unit was put together or when oil was first produced from wells in that unit. We can only assume the TEC Unit later became the East Rose Field Unit since the twelve leases in controversy are included in both units.

In a memorandum decision covering ten pages of the record on appeal the trial judge attempted to set forth a history of the ownership of the leases and of the interests of the respective parties and concluded:

"The Court concludes that in each action the plaintiff has failed to state a cause

of action on which relief may be granted and that the motion for summary judgment lodged against each petition should be sustained."

In arriving at this conclusion he found that no oil had been produced from the land covered by defendants' leases, that no unitization of defendants' leases had been established, that the plaintiff's operating agreements were restricted to the land covered by defendants' leases, that the operating agreements did not authorize plaintiff to incur expense on other acreages in the unit or to charge a fractional share to defendants, and that the operating agreements were null and void.

The appellant Klippel contends on appeal it was error to enter summary judgments in favor of defendants, for to do so the judge had to resolve genuine issues of material fact in dispute among the parties to these actions. These disputed issues included the question of the validity of the leases and of the operating agreements, which in turn depended upon the existence of binding unitization of these leases with other producing leases in the East Rose Field Unit. He points out that the validity of the operating agreements on which suits were filed were challenged by affirmative defenses which could only be determined in defendants' favor on factual evidence not before the court. He further argues the inclusion of defendants' lease interests in the unit operation of the East Rose Field Unit was ratified by defendants by accepting royalty credits and by paying operating expenses based upon the respective unit participation factors assigned to their leases.

The appellees vigorously argue in support of the summary judgments that the documents before the trial court conclusively establish that no valid lease interests were assigned to them, that they never agreed to unitization and no unitization of their leases was established, that the operating agreements were limited to their respective tracts and had terminated and that their lease interests expired because of lack of production from the tracts covered by their leases.

It might be helpful to review generally some of the aspects of unitization of oil and gas lease interests. Consolidation of oil and gas leasehold estates can be accomplished in a number of ways: (1) The execution of a community lease by two or more separate landowners; (2) the declaration of a consolidated unit by a lessee under a lease clause permitting such unitization; (3) separate

pooling agreements executed by the parties in interest; and (4) governmental fiat. (See Ferd E. Evans, Jr., Some Aspects of Gas Unitization, 7 Kan. Law. Rev. 1 (1958), and 3A Summers, Oil and Gas [Perm. Ed.], § 612, p. 479.)

The legal results of unitization may be roughly summarized as follows: (1) The life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included; (2) the commencement of a well on any one of the tracts operates to excuse the payment of delay rentals on all included tracts for the period stated in the respective leases; (3) production from a well on any one of the tracts relieves the obligation to pay delay rentals, during production, on all included tracts; (4) the lessee is relieved of the usual obligation of an implied covenant for reasonable development of each tract separately; (5) wells may be located without reference to property lines; and (6) the lessee is relieved of the obligation to drill off-set wells on other included tracts to prevent drainage by a well on any included tract. (See Hoffman, Voluntary Pooling and Unitization, pp. 135-36, and *South. Royalty Co. v. Humble Oil & Ref. Co.*, 151 Tex. 324, 249 S.W.2d 914.)

The extent of participation of a particular leasehold in the income from and expense of operating the total unit is generally fixed at the time the original unitization takes place. The extent of participation of a particular tract in the income and expense of the unit is called its unit participation factor.

It has been said that the very essence of a pooling or unitization agreement is the contribution of some interest in oil or gas to the common pool from which possible royalties may be received, and when a participant no longer holds a valid interest in the pool or unit he no longer is entitled to share in production and cannot be required to pay a share of unit expenses which accrue after his interest terminates or is disposed of. (See *Hover v. Cleveland Oil Co.*, 150 Kan. 531, 95 P.2d 264.)

The sale of pooled interests in oil or gas to a grantee ordinarily carries with it all the rights and burdens of a previously existing pooling agreement. (*Hoffman v. Sohio Petroleum Co.*, 179 Kan. 84, 292 P.2d 1107.) The court held in *Hoffman* that when the purchasers accepted their conveyances "they made them contracts in writing whereby they not only took, but agreed to take,

their particular tracts with whatever benefits or burdens might eventually come to them under the terms of such lease." (179 Kan. p. 89.)

It has been held that the owner of an interest in oil and gas in a unitized pool who did not sign a unitization agreement may nevertheless ratify and be bound according to its terms by accepting royalties and paying unit expenses on the basis of his acreage as provided in the unitization agreement. The acceptance of a unitizing agreement is not required to be in writing nor need it be signed by a party in whose favor it is made, but it may be sufficient that such party knowingly accepts benefits and by doing so he becomes bound by its terms. (See *Dobbins v. Hodges,* 208 La. 143, 23 So.2d 26; *Merrill Eng. Co. v. Capital Nat. Bk.,* 192 Miss. 378, 400, 5 So.2d 666; and Myers, The Law of Pooling and Unitization [Sec. Ed.], § 4.08, p. 139.) The binding effect of ratification of a unitizing agreement has been recognized under varying circumstances. (See 3A Summers, Oil and Gas, § 606.1, p. 410, and Hoffman, Voluntary Pooling and Unitization, p. 131.)

In our present case the defendants admit they received assignments of interest in oil and gas leases which assignments covered lands designated in the instruments of assignment as participating in the East Rose Field Unit at a specified field unit participation factor.

The questions raised by them as to the validity of their lease interests depend upon determinations of factual issues including but not limited to (1) whether the lease interests were included in a unitized acreage from which oil was being produced thus extending the primary terms of the original leases, (2) if said interests were not unitized in the field unit, whether the lease owners may have become bound by their ratification of the unitization agreements in accepting credits and paying pool expenses after receipt of their interests, (3) whether the lease owners held valid and existing interests in oil and gas which could contribute to the common pool or unit, and (4) whether the operating agreements should be set aside on grounds of misrepresentation, unconscionability and fraud or because the nonoperators held no valid oil and gas interests which could contribute to the common pool.

A summary judgment may be entered if the pleadings, depositions, answers to interrogatories and admissions on file show

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (K.S.A. 60-256 [c].) But in considering a motion for summary judgment the movant's adversary is entitled to the benefit of all reasonable inferences that may be drawn from the facts under consideration. (*Vaughn v. Murray,* 214 Kan. 456, Syl. 1, 521 P.2d 262; *Rothwell v. Transmeier,* 206 Kan. 199, Syl. 3, 477 P.2d 960.)

It is apparent that the defendants attacked the allegations in the petitions by raising affirmative defenses. Questions of fact remain in dispute and the summary judgments in favor of defendants were prematurely and improperly entered.

Reversed and remanded.