Langdon L. MORGAN and Reece D. Morgan, Plaintiffs/Appellants,

v.

MOBIL OIL CORPORATION, Defendant/Appellee.

ANADARKO PRODUCTION COMPANY, Plaintiff/Appellant,

v.

Fern Kelley HUFFMAN, a/k/a Mildred Fern Huffman; Marjorie Fay Huffman Culmer; John Hubert Huffman; Dr. Alan Leslie Huffman; Kenneth K. Derrick; Ralph O. Chapline; Talma Chapline; Martell L. Sidwell; W.L. Sidwell III; Howard Sidwell; Donald W. Sidwell, Defendants/Appellants,

Ross E. Taylor; Bertha J. Taylor; E.L. Butler; Maxine Smith Herbel; Lamont Rowland; Gertha Phifer; Harper Rowland; Frederick M. Butler; Alice Wheaton; Alice Wheaton Magro; Caroline B. Cauldwell; J.B. Bradford; Herbert G. Bradford; J.B. Wheaton; Stephen E. Coulter; Blanche Webb; June Phillips; Harold Coulter; Gilbert Coulter; Eula Mae Peterson; Donald K. Coulter; Rita Anne Ubelhart; Larry E. French; and Texaco, Inc., Defendants/Appellees.

Nos. 83–1263, 82–1615 and 82–1620.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1984.

Ted R. Morgan, Lakin, Kan., for plaintiffs/appellants Langdon L. and Reece D. Morgan.

Jerome E. Jones, Hershberger, Patterson, Jones & Roth, Wichita, Kan., for defendant/appellee Mobil Oil Corp.

Jerome E. Jones, Hershberger, Patterson, Jones & Roth, Wichita, Kan. (Richard Jones and Robert J. Roth, Hershberger, Patterson, Jones & Roth, Wichita, Kan., with him on the brief), for plaintiff/appellant Anadarko Production Co.

Mark H. Adams, II, R. Douglas Reagan and Dale M. Stucky, Wichita, Kan. (John W. Sumi, Wichita, Kan., with them on the brief), for defendants/appellants Sidwell, Huffman and Chapline.

Dale M. Stucky and Gregory J. Stucky, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan. (Bernard E. Nordling and Leland E. Nordling, Kramer, Nordling & Nordling, Hugoton, Kan., of counsel), for defendants/appellees Coulter and Taylor.

Charles J. Woodin and R. Douglas Reagan, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant/appellee Texaco, Inc.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In the primary case the parties are Langdon L. and Reece D. Morgan against Mobil Oil Corporation, whereas in No. 82–1615 the caption is *Anadarko Production Company v. Taylor,* et al. These cases, because of their similarity, were consolidated for the appeals. Apparently there was a good deal of primary preparation in both instances, and indeed, the facts are not in dispute and the cases were disposed of by the trial court on motions for summary judgment.

The question which is involved in each of these cases is the interpretation to be given to a number of agreements between the parties concerning oil and gas rights. We must decide whether unitization agreements were limited to certain geological formations and, if so, the consequences of such limitations. In other words, we must decide whether in the case of the Morgans the rights of the lease are governed by the surface identification or description, or whether the rights to the ownership of the lease are limited to the geological formation mentioned in the unitization agreement. The issue in *Anadarko* is similar to that of *Morgan* except in emphasis. The arguments deal with Anadarko's contention that ownership or having rights on the surface

do not grant rights below the certain formations which have been worked previously.

## THE MORGAN CONTROVERSY

### The Facts

The facts in *Morgan,* as in the *Anadarko* case, are undisputed. The history of this problem reaches back to January 1930, on which date appellants' predecessors in interest executed three oil and gas leases to Mobil's predecessors in interest. These pertained to properties described as the Southeast Quarter (SE/4) of Section Six (6), the Northeast Quarter (NE/4) of Section Six (6) and the Northwest Quarter (NW/4) of Section Eight (8). All of the Sections are in Township 33 South, Range 39 West, Morton County, Kansas. All three leases provided a primary term of ten years. A commercial producing gas well was completed on the SE/4 of Section 6 on July 7, 1930. This well continues to produce at the present time. No other wells were completed on the land covered by the other leases for over 30 years.

The Kansas Corporation Commission entered an order regarding unitization in 1938 which grew out of the Hugoton field, and limited itself to the Hugoton formation. Mobil's predecessor in interest prepared an instrument entitled "Unit Operating Agreement" which was dated November 28, 1938, signed by all of the mineral and fee owners.

The Unit Operating Agreement referred to was amended on March 11, 1974 as it related to production from the Panoma-Council Grove formation. Approximately one month later, a well was completed on the NW/4 of Section 8 which was capable of producing from the Panoma-Council Grove formation.

On June 20, 1980, a second well was completed on the NW/4 of Section 8. This was producing from another formation known as the Morrow formation. The Morrow formation is located below the base of the Panoma-Council Grove formation. Also it is to be noted that the Morrow formation is not regulated by the Kansas Corporation Commission.

The appellants, the Morgans, and Mobil were not able to agree at the time (in 1981) on a division order to allocate payment of royalties. Due to the disagreement appellants commenced an action in the district court in Morton County, Kansas. This action was removed to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1441. Both parties agreed that there were no material facts remaining and both made motions for summary judgment. The trial court granted Mobil's motion and this appeal by the Morgans followed.

The appellants maintain that their leases with Mobil's predecessors in interest terminated at the end of their primary term as to production from all geological formations below the Panoma-Council Grove formation. The argument of appellants is that two of these leases would have expired at the end of their primary terms due to nonproduction were it not for the 1938 Unit Operating Agreement and the 1974 amendment. The argument of appellants is that these instruments limited the horizontal extent of the leases. The appellants construe the Unit Operating Agreement to limit Mobil's rights to the Hugoton formation. Appellants also interpret the 1974 amendment as extending Mobil's rights to include the Panoma-Council Grove formation. Thus, appellants contend that Mobil has no rights to production in the Morrow formation which lies beneath the base of the Panoma-Council Grove formation.

The appellees take a contrary stand with respect to these documents. It is Mobil's position that absent specific language in the documents which limit the rights of the lessees to certain horizons, its rights extend from the surface to the center of the earth. Thus, according to the appellees, the Unit Operating Agreement unitized the entire area and was not limited to the Hugoton formation, as the appellants contend.

The district court rejected the appellants' argument and found that Mobil's rights were perpetuated as to all horizons.

This court, of course, reviews the case *de novo,* and does so by examining and considering the summary judgment and other proceedings. We must determine whether the standard set forth in Rule 56 has been met. *Exnicious v. United States,* 563 F.2d 418, 423 (10th Cir.1977). This standard as it pertains to this case is in agreement with the *de novo* standard of review of contract interpretations in Kansas. *Klema v. Soukup,* 175 Kan. 775, 267 P.2d 501, 505 (1954) ("* * * the contract being in writing, we have the same duty as did the trial court to determine the question").

In ruling on the case we consider the same laws as considered by the trial court, that is, the law of Kansas, for guidance in interpreting the relevant oil and gas documents. The Kansas Supreme Court has held that documents must be interpreted as a whole and not by analysis of isolated provisions. *Jackson v. Farmer,* 225 Kan. 732, 594 P.2d 177 (1979). The law presumes that the parties understand their contract and that they had the intent that its terms suggest. *Quenzer v. Quenzer,* 225 Kan. 83, 587 P.2d 880 (1978). The court will not, under the guise of interpretation, write a new contract for the parties to achieve some equitable result. *Martin v. Edwards,* 219 Kan. 466, 548 P.2d 779 (1976); *Cline v. Angle,* 216 Kan. 328, 532 P.2d 1093 (1975); *Endicott v. DeBarbieri,* 189 Kan. 301, 369 P.2d 241 (1962).

In addition to considering the Kansas rules for contract interpretation we must consider also the basic legal principles regarding unitization. Indeed, the law in this latter area may be more likely to dictate the result than the contract interpretation principles regarding unitization.

"The legal results of unitization may be roughly summarized as follows:

(1) the life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included;

(2) the commencement of a well on any one of the tracts operates to excuse the payment of delay rentals on all included tracts for the period stated in the respective leases;

(3) production from a well on any one of the tracts relieves the obligation to pay delay rentals, during production, on all included tracts;

(4) the lessee is relieved of the usual obligation of an implied covenant for reasonable development of each tract separately;

(5) wells may be located without reference to property lines; and

(6) the lessee is relieved of the obligation to drill off-set wells on other included tracts to prevent drainage by a well on any included tract.

(*See Hoffman, Voluntary Pooling and Unitization,* pp. 135–36, and *South Royalty Co. v. Humble Oil and Ref. Co.,* 151 Tex. 324, 249 S.W.2d 914)."

*Klippel v. Beinar,* 222 Kan. 681, 685, 567 P.2d 867 (1977).

We must be mindful of the above general principles in considering the arguments that are to be reviewed.

A careful study of the 1938 Unit Operating Agreement and the 1974 amendment does not give the slightest indication that they would be limited to certain horizons, but instead suggest that Mobil's rights as to all horizons were perpetuated. These documents, taken as a whole, simply do not support a construction that the parties intended to limit the lessee's rights to either the Hugoton or Panoma-Council Grove formation.

The 1938 Unit Operating Agreement provides that production from the unitized "area" perpetuates the lessee's rights. It provides in part as follows:

1. Lessors hereby agree that for the purpose of connecting above described gas well to a pipe line, the production of oil and gas, and division of royalties on oil and gas, said unitized area, however the same may now or hereafter be divided in ownership shall be and remain a single unit, and shall be developed and operated

as a single lease, and all royalties accruing from oil and gas produced from any well or wells located anywhere on said unitized area, shall be divided among and paid to the several lessors, their heirs and assigns, * * *. This agreement shall be in full force and effect, and the respective payments to be made thereunder and as above provided, at the time said gas well has been connected to a pipe line and is being produced, and shall be in lieu of any and all other payments to which this Lessee may be obligated, whether the same was by the terms of the oil and gas leases, held by this lessee, or by special contracts entered into by any of said Lessors and Lessee. Such respective payments shall be made at the time and in the manner and to the depository specified in said respective leases. *The production of oil and/or gas from said unitized area in paying quantities, shall perpetuate the oil and gas rights of Lessee under all of said leases in said entire unitized area and relieve Lessee from all further obligation to drill and/or to pay delay rentals under any and all leases covering lands within said area;* PROVIDED, HOWEVER, that if oil in commercial quantities be discovered on the unitized area, or on adjoining lands, nothing herein contained shall relieve lessee from the obligation to develop the unitized area in conformity with the practice of the oil industry.

    *     *     *     *     *     *

6. *This agreement and the rights of Lessee under all leases covering parcels within the unitized area, shall be and remain in full force and effect so long as oil or gas is produced in paying quantities anywhere in said area, and shall not be affected by the expiration of the primary term of said leases, or any of them.* (Emphasis supplied).

It is difficult to find any word or clause or sentence which imposes any kind of limitation upon the lessees so long as they drill within the unitized area. This wording can be interpreted to apply to horizontal as well as vertical divisions. *See Rogers v. Westho-ma Oil Co.,* 291 F.2d 726 (10th Cir.1961) (interpreting "part"). There is no language in the 1938 Unit Operating Agreement which applies specifically to any geologic formation. It is customary and is recommended practice to specify the formations to be included in any unitization agreement. *Rogers v. Westhome Oil Co., supra;* 6 H. Williams and C. Meyers, Oil and Gas Law, § 974.1 (1981). Acknowledging that this is the desired practice, however, is not the same as reading specificity into a contract where it does not already exist. The Unit Operating Agreement of 1938 contains no indication of any intention to limit the lessee's rights to any horizon.

The 1974 amendment to the Unit Operating Agreement contains specific language regarding the Panoma-Council Grove Formation. It does not, however, limit unitization to that formation or limit the lessee's rights to that formation. The specificity in the amendment merely allocates the payment of royalties for any well producing from the Panoma-Council Grove formation.

Thus it is quite evident that neither the Unit Operating Agreement nor the 1974 amendment imposes limitations on lessee's rights to any specific formations. The language in both documents is broad and a court may not rewrite the agreements of the parties. Absent specific contract language to the contrary, the parties appear to have intended to unitize the entire area without limitations as to horizons. Thus, it is apparent that Mobil's rights to all formations in the lands covered by the agreements have been perpetuated.

A plethora of cases have firmly established the doctrine that operations conducted on any part of the unitized acreage, even though not on the land under the lease in question, fulfill the indivisible obligation of the lessee and hold the entire lease beyond the primary term.

*Mize v. Exxon Corp.,* 640 F.2d 637, 641 (5th Cir.1981).

The conclusion which was reached by the trial court in favor of the freedom to drill at any horizon should be affirmed.

We do not undertake to rule on the claim that the rights extend to the middle of the earth. We do recognize that the rights protected by the Unitization Agreement extend to the formations here in controversy.

### THE ANADARKO CASE

There is little difference between the *Morgan* case and the *Anadarko* case. The *Anadarko* case requires this court to interpret the scope of the Unit Operating Agreement, just like it did in *Morgan.* Specifically, we must decide whether the agreement unitizes the lands for the purpose of producing gas only from the Hugoton formation, or whether it unitizes the relevant lands as to drilling and royalty allocations from all gas formations below the surface, including the Panoma-Council Grove formation.[1] This action was brought to determine the rights of various lessors to royalties from production from the Panoma-Council Grove formation.

Plaintiff's predecessor (hereinafter referred to as "the production company")[2] in 1935 entered into an oil and gas lease with the owners of the NW/4 of Section Fifteen (15), Township Thirty Four (34) South, Range Thirty-Eight (38) West, Stevens County, Kansas. The following year the company drilled a well and began producing gas from the Hugoton formation. In 1943, the production company signed separate oil and gas leases with parties owning land adjacent to the oil well site. The specific transactions are set forth in the district court's opinion. *Anadarko Prod. Co. v. Taylor,* 535 F.Supp. 103, 104–05 (D.Kan.1982).

On March 21, 1944, the Kansas Corporation Commission (KCC) promulgated a Basic Proration Order for the Hugoton Gas Field in order to regulate the production rates of all wells on the Hugoton formation. On July 8, 1944, the production company and the above lessors entered into a Consolidation Agreement, creating a 480 acre gas production unit and providing for allocation of royalties from gas produced on the unit. The agreement also authorized the production company to lease an additional 160 acres, thereby creating a 640 acre unit to obtain the maximum allowable production rate for the existing well under the Commission's order. Afterwards, the production company leased the Coulter 160 acre plot of land and, by amendment to the lease, made the plot a part of the gas unit. The production company also leased Texaco's one-half interest in the Coulter tract to complete the unit.

It was not until some years after the above leases were unitized that the plaintiff Anadarko leased from the production company the rights to all oil and gas located in formations below the Hugoton formation. In 1975, Anadarko drilled a well on the tract owned by the Coulter and Texaco defendants and began producing gas from the Panoma-Council Grove formation. The Panoma-Council Grove formation is geologically distinct from the Hugoton formation. Disputes arose as to the proper allocation of royalties from this new well, and it was then that the plaintiff Anadarko filed an interpleader action which is referred to above to determine the rights to each of the lessors to royalties from the Panoma-Council Grove production. Plaintiff Anadarko and defendants Taylor, Coulter and Texaco moved for partial summary judgment.

The position of Anadarko was that the Consolidation Agreement and allied leases contained no limiting language, and thus unitized the 640 acre tract as to all geological formations containing oil and gas. Therefore, they argued that the production from the Panoma-Council Grove formation is subject to the agreement, and that royalties should be distributed accordingly.

---

1. Although this case involves some of the same gas pools as *Morgan,* the well sites and governing unit operating agreements are different. The Hugoton formation alone is 65 miles long and 40 miles wide, and hundreds of different wells have produced gas from the Hugoton formation since the early 1940s. *Republic Nat-*

*ural Gas Co. v. Baker,* 197 F.2d 647, 648 (10th Cir.1952).

2. Plaintiff production company has succeeded to gas leases from a number of predecessor companies. For the purposes of this opinion, we will refer to the predecessors as "the production company."

Defendants Taylor, Coulter and Texaco argued that the Consolidation Agreement and the Coulter and Texaco leases unitized the area only for production from the Hugoton formation, and thus did not extend to the Panoma-Council Grove formation. Thus, according to these defendants the Panoma-Council Grove well and the Coulter and Texaco properties were not subject to the royalty provisions of the Consolidation Agreement because the Agreement did not specifically unitize the area as to this formation.

The trial court granted the Coulter-Taylor motion holding that only the Hugoton formation was unitized by the Consolidation Agreement and the Texaco and Coulter leases. The district court found that based on the "obvious inter-relationship between the KCC's Hugoton Proration Order and the Consolidation Agreement, the reasonable interpretation of the instruments was that the parties only intended the Hugoton formation to be controlled by the Agreement." *Anadarko*, 535 F.Supp. at 109. The court also pointed to language in the Consolidated Agreement and the Texaco and Coulter leases to support this construction. *Id.* at 109–11.

■ The trial judge specifically found that "none of the litigants contend that the instruments are ambiguous and consequently this court shall not refer to any parol evidence to explain or interpret the documents." *Anadarko*, 535 F.Supp. at 108. Because the court found no ambiguities it should have limited itself to the four corners of the instruments to interpret their meaning. The court did not do this.

■ In examining the instruments anew, we have found no language which shows intent to limit the agreements to the Hugoton formation. The Consolidation Agreement provides in part:

1. That the aforesaid oil and gas leases, insofar as they cover the lands hereinbefore particularly described, shall be, and the same are hereby consolidated, for the purpose of drilling, development and production of gas and division of royalties on gas, the consolidated area, however the same now or hereafter may be divided in ownership, shall be and remain a single unit, shall be drilled and operated as such, and all royalties accruing from gas produced from any well or wells which may be now located or hereafter drilled anywhere on said consolidated area shall be paid as hereinafter provided.

The Agreement unitizes the leases, which conveyed mineral rights to all formations below the surface of the lands. The Agreement does not ever mention the Hugoton formation. Although the Agreement does refer to the already existing well, it also purports to unitize the area as to "any well or wells which may be now located or hereafter drilled anywhere on said consolidated area." Had the parties intended to limit the agreement to a single horizon or formation they had an opportunity here to so provide. They did not show any inclination to so limit the agreement.

The Coulter and Texaco leases do not mention the Hugoton formation. Both appear to grant the production company rights to all minerals, oil and gas. Moreover, the Coulter lease modification of 1964 does not limit its application to the Hugoton formation, even though the existence of the Panoma-Council Grove formation was known at that time. It states merely "this lease shall remain in force so long as * * * [gas is being produced or] a well located on any land included in the gas unit, hereinabove described, is being drilled, re-drilled, worked or re-worked." Thus, by its terms, the lease term is quite broad. Had the defendants intended only to unitize the Hugoton formation, here again they should have so specified.

The trial court relied on isolated sentence fragments to support its conclusion that the agreements applied only to the Hugoton formation. The judge looked at the surrounding circumstances and read meanings into these phrases, which meanings are contrary to the broad language employed generally in the instruments. The court assumed that the Kansas Corporation Commission order was integral to the unit agreement and limited the agreement to the Hugoton formation. In doing so, the court confused the inducement to contract with the actual contract terms. It may be

that the parties unitized the land in response to the Hugoton order, but they drafted an agreement of much broader scope. As in the *Morgan* case, the Kansas rules of contract interpretation fail to permit us to rewrite a more narrow agreement for the parties.

Having concluded that the judge's order in the *Morgan* case should be affirmed, we reaffirm that determination which is first ruled above. This is based upon the fact that the trial court concluded that the unitization agreement was not limited in the *Morgan* case. We must, however, reverse the judgment of the trial court in *Anadarko,* since the result is completely out of harmony with that which was reached in *Morgan v. Mobil.* There is no justification for going contrary to the conclusions in *Morgan.* We hold that plaintiffs' partial summary judgment in the *Anadarko* case should be granted.

Both cases are remanded to the district court for further proceedings consistent with this opinion.