(705 P.2d 558)

No. 56,911

ERNEST L. VEVERKA, *Appellee*, v. DAVIES & COMPANY, INC.,
*Appellant*.

Opinion filed August 29, 1985.

*Kenneth L. Cole*, of Woelk, Culley, Ehrlich & Cole, of Russell, and *Robert C. Allan*, of Wichita, for the appellant.

*Michael S. Holland*, of Russell, for the appellee.

Before FOTH, C.J.*, REES and PARKS, JJ.

* Majority opinion was approved by Foth, C.J., prior to his untimely death.

PARKS, J.: Plaintiff, Ernest L. Veverka, is the owner of two quarter sections of land which have been unitized for gas production with a quarter section of land owned by defendant Irene Krug. Defendant Davies & Co., Inc. (Davies) is the oil and gas lessee on all three tracts included in the gas unit. Plaintiff filed this lawsuit against both Davies and Krug but Krug defaulted. Plaintiff's action challenged the amount of the royalty payment which defendant Davies indicated it would be paying plaintiff in its division order. Plaintiff prevailed in district court and defendant Davies appeals.

In December 1977, plaintiff Ernest Veverka executed oil and gas leases on two quarter sections of land to G. R. Dillard. Defendant Irene Krug and her husband also executed leases on their neighboring quarter section to James Devlin. Defendant Davies subsequently obtained the working interest in all three tracts from the lessees. The leases included the standard language of a Form 88 lease including the following authority to unitize:

"Lessee shall have the right as to all or any part of the land described herein, without lessor's joinder, to combine the gas leasehold estate and the lessor's gas royalty estate created by this lease with the gas rights in any other lease or leases, located in the vicinity thereof, whether owned by lessee or some other person or corporation, so as to create by the combination of such leases one or more operating units of not more than 640 acres each. In the event such operating unit or units is/are so created by lessee, lessor agrees to accept and shall receive out of the production from such operating unit or units, such portion of the royalty as the number of acres out of this lease placed in any such operating unit or units bears to the total number of acres included in such operating unit or units. The commencement of a well, or completion of a well to production, on any portion of an operating unit shall have the same effect under the terms of this lease as if a well were commenced, or completed, on the land embraced by this lease."

Both the Krug lease and the leases executed by plaintiff reserved the standard ⅛ royalty to the lessor but the plaintiff's leases also included the following typewritten language at the bottom of the printed form lease:

"In addition to the royalty reserved Lessor is granted an additional 1/16 royalty."

In November 1979, defendant Davies exercised its contractual right to unitize the gas leasehold estate of the Krug and Veverka quarter sections. A unit designation was properly filed and recorded and gas production was subsequently obtained on one of plaintiff's tracts of land.

A controversy then arose over the amount of the royalty due plaintiff. Defendant Davies tendered plaintiff a Gas Division Order for execution which provided that plaintiff would receive a royalty of ⅔ of ³/₁₆ of all gas produced from the unit. Defendant Krug would receive ⅓ of ⅛ of all production. Plaintiff contended that because of the provision in his leases for an additional ¹/₁₆ royalty, he was entitled to a royalty equal to ⅔ of ⅛ plus ¹/₁₆ of all production. In short, plaintiff contended that the ¹/₁₆ royalty interest was not subject to the proportionate reduction effected on the standard ⅛ royalty by the fact of unitization. Plaintiff filed this lawsuit to resolve the issue naming both Krug and Davies as defendants.

On motion for summary judgment, the district court held in favor of plaintiff. Defendant was directed to pay plaintiff a ¹/₁₆ royalty plus a ⅔ of ⅛ royalty. Defendant appeals.

The parties appear to agree that if unitization had not taken place and gas had been produced from one of plaintiff's tracts, he would have been entitled to a royalty of ⅛ + ¹/₁₆ or ³/₁₆ of the production obtained from his land. Thus, at issue is the effect unitization has on the calculation of royalty.

A royalty is that part of the oil or gas payable to the lessor by the lessee out of oil and gas actually produced and saved. It is the compensation to the lessor provided in the lease for the lessee's privilege of drilling and producing oil or gas. It is personal property and does not include a perpetual interest in and to the oil and gas in place. *Cosgrove v. Young*, 230 Kan. 705, Syl. ¶ 2, 642 P.2d 75 (1982). The royalty is expressed in the oil and gas lease as a fractional portion of total production obtained from property covered by that lease. Thus, to calculate the amount of oil or gas payable to the lessor as "royalty," the total number of barrels of oil or metered cubic feet of gas is multiplied by the fraction provided for in the lease. Calculation of the actual amount of a royalty may be viewed as dependent upon two factors: the production factor and the fractional share expressed in the lease. Therefore, resolution of this case requires that we first examine the effect unitization has on these two factors and that we then decide the amount of the two factors in this case.

Unitization is a means of consolidating development of property overlying a mineral reservoir into a single production unit. The legal effects of unitization have been summarized as follows:

"(1) The life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included; (2) the commencement of a well on any one of the tracts operates to excuse the payment of delay rentals on all included tracts for the period stated in the respective leases; (3) production from a well on any one of the tracts relieves the obligation to pay delay rentals, during production, on all included tracts; (4) the lessee is relieved of the usual obligation of an implied covenant for reasonable development of each tract separately; (5) wells may be located without reference to property lines; and (6) the lessee is relieved of the obligation to drill off-set wells on other included tracts to prevent drainage by a well on any included tract. (See Hoffman, Voluntary Pooling and Unitization, pp. 135-36, and *South Royalty Co. v. Humble Oil & Ref. Co.*, 151 Tex. 324, 249 S.W.2d 914.)

"The extent of participation of a particular leasehold in the income from and expense of operating the total unit is generally fixed at the time the original unitization takes place. The extent of participation of a particular tract in the income and expense of the unit is called its unit participation factor." *Klippel v. Beinar*, 222 Kan. 681, 685, 567 P.2d 867 (1977).

See also *Morgan v. Mobil Oil Corp.*, 726 F.2d 1474, 1477 (10th Cir. 1984).

Ordinarily, the production factor which goes into calculating the amount of a royalty is equal to all of the production obtained on the leasehold. Unitization alters this factor since the lessor will be entitled to receive a royalty for any production within the pooled unit even though the producing well is not on his particular tract of land. On the other hand, the amount of the royalty will be limited to a pro rata share of the unit production based on a participation formula expressed in the agreement even though the producing well is actually located on property covered by the lessor's lease. 6 Williams & Meyers, Oil and Gas Law § 951, p. 694.10 (1984). Usually, as in this case, the participation formula is based on the ratio between the acreage covered by the particular lease to the amount of acres in the total unit. Thus, this participation figure modifies the production factor such that the lessor of a unitized tract is entitled to a royalty based on a portion of the production obtained from the entire unit, while before unitization he would receive a royalty based on all of the production from his particular leasehold.

The actual amount of a royalty to be paid a lessor is ordinarily equal to some fractional portion of the production obtained from the leased premises. Unitization spreads the production over several leases and, thus, creates a presumption that only a certain portion of the total production can be attributed to a particular

piece of property in the unit. *Dillon v. Holcomb,* 110 F.2d 610, 611 (5th Cir. 1940). In effect, unitization alters the production factor of the formula used to determine the royalty due but it does not alter the fractional royalty figure set out in the agreement between the lessor and lessee. 1 Myers, The Law of Pooling and Unitization § 14.01, pp. 462-63 (2d ed. 1967); 3 Kuntz, Law of Oil and Gas § 42.5(f), p. 378 (1967). For example, in *Dillon,* the plaintiff/lessor was entitled under his lease to receive the usual ⅛ royalty plus an overriding royalty and an oil payment. His four-acre leasehold was unitized with a six-acre tract and production was obtained on the six-acre leasehold. The participation formula was based on proportionate acreage so that plaintiff was entitled to $4/10$ of unit production. The trial court held that plaintiff was entitled to a royalty based on his proportionate share of the royalty stipulated in the lease of the producing six-acre tract or $4/10$ of ⅛. The Fifth Circuit reversed and held that plaintiff was entitled to receive a royalty in accordance with the terms of his lease and not according to the terms of the other lease in the unit even though production may have been wholly derived from that other leasehold. The court noted that the unitization created "the presumption that production from the well to be drilled would be drawn from a single pool, $4/10$ of which would be supplied from appellant's land." *Dillon,* 110 F.2d at 611. Thus, the court held that plaintiff was entitled to the fractional amounts specified in *his* lease for the usual royalty, the overriding royalty and the oil payment multiplied by $4/10$. See also *Waller v. Midstates Oil Corporation,* 218 La. 179, 48 So. 2d 648 (1950).

To summarize, unitization alters the amount of royalty a lessor will receive out of production obtained on his leasehold by redefining the production factor of the royalty calculation. The fractional royalty share stated in the lease is not altered by unitization, it is simply multiplied by a different production factor.

Turning now to the circumstances of this case, the parties agree that the participation formula specified in the lease would result in ⅔ of the unit production being allocated to plaintiff's leaseholds. Thus, the amount of royalty to which he would be entitled would equal some fractional royalty times ⅔ of unit production. In addition, plaintiff has acknowledged that the

royalty fraction stated in his lease is ³/₁₆. However, he contends that only ⅛ of that fraction should be multiplied by the reduced share of unit production while the remaining ¹/₁₆ fraction typed in at the bottom of the lease form should be multiplied by all of the production obtained from his leasehold. In other words, plaintiff contends that the unitization provision in his lease, which included the agreement to accept a royalty calculated with reference to a proportion of unit production, does not apply to the additional ¹/₁₆ royalty.

The following rules apply when determining the proper construction of an oil and gas lease:

" 'Rules governing the construction of oil and gas leases include these: the intent of the parties is the primary question; meaning should be ascertained by examining the documents from all four corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; reasonable rather than unreasonable interpretations are favored; a practical and equitable construction must be given to ambiguous terms; and any ambiguities in a lease should be construed in favor of the lessor and against the lessee, since it is the lessee who usually provides the lease form or dictates the terms thereof.' " *Rook v. James E. Russell Petroleum, Inc.*, 235 Kan. 6, 14, 679 P.2d 158 (1984).

The option to unitize is granted in plaintiff's lease to the lessee and could have been exercised at any future time. The unitization provision includes the lessor's agreement to accept a pro rata royalty if the lessee decides to unitize and there is no language in the typewritten addition which would except application of this modification to the additional royalty fraction. Plaintiff does not contend that the additional ¹/₁₆ is somehow different from the standard ⅛ share. Indeed, it appears that the parties simply sought to assure the lessor a larger royalty interest than is customarily received. The same end could have been accomplished if the form language of the lease had been struck over and ³/₁₆ inserted in the place of the printed ⅛ provision.

In sum, the royalty fraction due plaintiff must be calculated according to his agreement while Krug is limited to recovering the royalty expressed in her lease. The unitization provision fixes the participation formula at ⅓ of production to Krug and ⅔ of production to plaintiff. Their respective leases then fix the fractional portion of the allocated production which the lessee is bound to pay them. The lessee agreed to pay plaintiff ³/₁₆ of the production to which he is entitled under the unitization or ⅔ of

the lessors' share of total production of the unit. Krug's lease entitles her to receive ⅛ of the production allocated to her leasehold after the unitization or ⅓ of the lessors' share of total production of the unit.

We conclude that the division order issued by defendant Davies correctly stated the amount of plaintiff's royalty as ⅔ of ³/₁₆ of the unit production. Therefore, we hold that the judgment of the district court which rejected the division order was erroneous.

Reversed.

REES, J., concurring: I wholeheartedly agree that the plaintiff's royalty interest is ⅔ of ³/₁₆ — or ⅛ — of the unit production. This result is not affected by the fact that it happens that the sole producing well on the unitized 480 acres is located on one of plaintiff's two quarter sections included in the unit. The result would be the same if the sole producing well was located on the Krug quarter section. As the result of unitization, the entire 480 acres became subject to a ⅛ royalty interest in the plaintiff, a ¹/₂₄ royalty interest in Krug and a ⅚ working interest in the defendant.

The majority's opinion sets forth the unitization clause language found in each of the plaintiff's leases to G. R. Dillard. This language appears verbatim in Krug's lease to Devlin. The majority alludes to this as "standard language of a Form 88 lease." I find this to be possibly misleading. The latest catalog of forms printed by the Kansas Blue Print Company, Wichita, Kansas, presently available to me lists some thirty-three versions of the so-called Producers 88 lease. It has been aptly commented that:

"There is no such thing as a 'standard' oil and gas lease form. The reference to a 'Producers 88' form is meaningless." Nordling, *Landowners' Viewpoints in Pipeline Right-of-Way and Oil and Gas Lease Negotiations*, 52 J.B.A.K. 35 (1983).

Relying upon *Cosgrove v. Young*, 230 Kan. 705, Syl. ¶ 2, 642 P.2d 75 (1982), it is said in the majority opinion that

"[R]oyalty is that part of the oil or gas payable to the lessor by the lessee out of oil and gas actually produced and saved. It is the compensation to the lessor provided in the lease for the lessee's privilege of drilling and producing oil or gas."

I cannot wholly agree. I have not yet altered my analysis as expressed in my dissenting opinion in *Drach v. Ely*, 10 Kan.

App. 2d 149, 694 P.2d 1310, *rev'd* 237 Kan. 654 (1985). There I said:

"[A]n oil and gas lease is a hybrid instrument. [Citations omitted.] It is a license to enter and explore for oil and gas. [Citations omitted.] It is a grant with conditions. One of the conditions is a reservation to the lessor of a share in the production — royalty. The right to royalty is reserved out of the lessor's grant. The lessor's right to royalty arises from his mineral interest ownership rather than arising from or originating with the lease. *Cf. In re Estate of Sellens*, [7 Kan. App. 2d 48, 51, 637 P.2d 483 (1981), *rev. denied* 230 Kan. 818 (1982)].

. . . .

". . . In general, bonus is the consideration paid by a lessee for the lessor's execution of an oil and gas lease, a license to explore, develop and produce, and pursuant to which production, if achieved, is shared on an agreed basis with the lessor's share free of production costs. Such lessor's share is usually referred to as royalty. 8 Williams and Meyers, Oil and Gas Law, pp. 65, 656 (1982); *In re Estate of Sellens*, 7 Kan. App. 2d at 51." 10 Kan. App. 2d at 162-63.

Obviously, my two points of "disagreement" with the majority's opinion have no significant effect upon the resolution of this appeal. Again, the result announced by the majority opinion is absolutely correct.