(724 P.2d 695)
No. 58,621

CHEROKEE RESOURCES, INC., *Appellee*, v. GOLD ENERGY
CORPORATION, *Appellant*.

Opinion filed September 11, 1986.

*Ronald L. Gold,* of Shawnee Mission, for appellant.

*Robert V. Talkington,* of Talkington, Larson & Chase, of Iola, for appellee.

Before BRAZIL, P.J., MEYER, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

LYLE, J.: Gold Energy Corporation appeals the judgment of the trial court denying its counterclaim which alleges that Cherokee Resources should be liable for its share of a guaranteed royalty payment due under an oil and gas lease. The facts are not in dispute and will be set forth chronologically.

On March 1, 1980, John Haddad, d/b/a H-H-H Oil Company, obtained an oil and gas lease from Stanley Dreher, Jr., and Maxine Dreher. The lease covered a 240-acre tract of land described as follows: The NW ¼ and the W ½ of the SE ¼ of Section 17, Township 24, Range 19, Allen County, Kansas. The lease clause in dispute provided: "Guaranteed royalty of $2,400.00 per year in the event of production. Any year in which royalty does not equal or exceed $2,400.00 then within sixty (60) days following the end of said year, Lessee shall pay lessor the difference between said royalties and $2,400.00."

Subsequently, all the property held by H-H-H Oil Company, including the 240-acre oil and gas lease, was transferred to Cherokee Resources.

On November 19, 1982, John Haddad, president of Cherokee

Resources, assigned an 80-acre tract of the lease to Ronald Gold, president of defendant/appellant Gold Energy Corporation (Gold). The purchase price for the 80-acre lease was $25,000. Gold paid $10,000 in cash and executed a promissory note for the remaining $15,000.

Gold was granted an option to purchase the leasehold on the remaining 160 acres. However, that option was never exercised and Cherokee Resources retained the rights to that portion of the 240-acre lease.

During the lease year ending March 1, 1982, the landowners, the Drehers, received $479.80 in royalties. Pursuant to the $2,400 guaranteed royalty clause in the lease between the Drehers and Cherokee Resources, Gold paid the Drehers $1,920.20.

The record does not reflect what, if any, royalty payments were made for the 1983 lease year.

During the lease year ending March 1, 1984, the Drehers received royalties in the amount of $697.82. Gold satisfied the guaranteed royalty provision by paying the Drehers $1,702.18.

All the wells on the 240-acre lease were located on the 80-acre tract assigned to Gold. No wells were located on the 160-acre tract retained by Cherokee Resources and, thus, there was no production on that portion of the lease. The record indicates that Cherokee Resources has not paid any of the guaranteed royalty payment since the 80-acre tract was assigned to Gold.

On March 29, 1984, Cherokee Resources filed suit against Gold in Allen County District Court, seeking to recover $2,241.98, the unpaid portion of the $15,000 promissory note plus interest. Defendant Gold filed a counterclaim, contending that Cherokee Resources should be obligated to pay a portion of the guaranteed royalty in an amount which is proportionate to the acreage Cherokee Resources retained. Gold also sought a declaratory judgment to hold Cherokee Resources responsible for its portion of the $2,400 guaranteed royalty payments due in the future, based on the 160 acres retained by Cherokee Resources under the lease.

The trial court entered judgment in favor of Cherokee Resources, based on the promissory note, in the amount of $2,241.98, and denied Gold's counterclaim, ruling that there was no evidence that the parties entered into an agreement as to

which of them should be liable for the guaranteed royalty. The trial court effectively held Gold liable. Defendant Gold timely appeals the denial of its counterclaim.

On appeal, Gold contends that the $2,400 "guaranteed royalty" is actually not a royalty but rather constitutes "rent." In characterizing the $2,400 obligation as rent, Gold relies upon Kansas cases which define royalties as "that part of oil and gas payable to the lessor by the lessee out of oil and gas *actually produced* and saved." (Emphasis added.) *Cosgrove v. Young,* 230 Kan. 705, Syl. ¶ 2, 642 P.2d 75 (1982). See *Lathrop v. Eyestone,* 170 Kan. 419, 424, 227 P.2d 136 (1951). The lease agreement provides that the Drehers, as lessors, are to receive as royalty one-eighth (⅛) of all the oil produced and saved from the leased premises. Gold argues that any payment made to the Drehers above the one-eighth royalty cannot be deemed a royalty because it does not come from oil which is actually produced. Gold contends that the $2,400 constitutes rent of $10 on each acre of the 240-acre lease.

Having designated the obligation as rent, Gold argues that the rent should be apportioned between Cherokee and Gold pursuant to the proportionate rent clause contained in the lease which provides that rent is to be paid in proportion to the amount of the lease held by each tenant:

"in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the *proportionate part of the rents due* from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rentals." (Emphasis added.)

According to Gold, Cherokee should be liable for $1,600 of the $2,400 rent and Gold should be liable for $800 of the rent. If production on Cherokee's acreage does not produce $1,600 worth of royalties, Cherokee is liable for the difference between the royalties paid and $1,600. Likewise, Gold would be required to pay the difference between $800 and the royalties received by the Drehers from Gold's 80 acres.

We conclude that the $2,400 guaranteed royalty should be deemed a royalty and not rent. The guaranteed royalty language in the lease is typical of the language used in drafting a minimum guaranteed royalty clause. See Hemingway, Law of Oil and Gas § 7.6 (2d ed. 1983); 3 Williams, Oil and Gas Law § 644.10 (1985).

"Cash payments in lieu of actual royalty, such as minimum royalty payments and shut-in royalty payments, are viewed as royalty and not as rentals." Hemingway, Law of Oil and Gas § 7.6, pp. 370-71 (2d ed. 1983). While no Kansas case on point has been found, other jurisdictions have held that minimum guaranteed royalty payments are royalty. See *Morriss v. First Nat. Bank of Mission*, 249 S.W.2d 269, 275 (Tex. Civ. App. 1952); *Carlisle v. United Producing Company*, 278 F.2d 893, 895 (10th Cir. 1960).

In Kansas, delay rentals refer to the rent a lessee agrees to pay the landowner when drilling operations are deferred. See *State, ex rel., v. Board of Regents*, 176 Kan. 179, 190, 269 P.2d 425 (1954). In the present case, the parties have "crossed off" or omitted the printed delay rental clause from the lease and thus it appears that the parties did not intend for the lease to provide for delay rentals. Similarly, the guaranteed royalty is technically not a bonus. A bonus is the consideration paid for the *execution* of an oil and gas lease. See *State, ex rel., v. Board of Regents*, 176 Kan. at 190; *Veverka v. Davies & Co.*, 10 Kan. App. 2d 578, 585, 705 P.2d 558 (1985). The $2,400 guaranteed royalty should not be deemed rent and, thus, the obligation should not be apportioned pursuant to the proportionate rent clause.

There is no evidence that the parties entered into an agreement as to which of them, or both, should be liable for the $2,400 guaranteed royalty. Gold is not contending that it is not liable for any of the $2,400. Rather, it argues that it is liable for the guaranteed royalty only to the extent of its proportion of ownership in the 240-acre tract.

The lease provides that, in the event that the royalties paid do not equal or exceed $2,400, then, *and only then*, the difference should be paid. That is, if the Drehers receive $2,400 in royalties, no further payments are required.

We conclude that the only logical decision in this case is that, in the event $2,400 in royalties has not been paid, Cherokee should be required to pay two-thirds of the difference and Gold should pay one-third. That is, the clear intent of the Drehers and H-H-H Oil Company was that the Drehers receive a guarantee of $2,400 in royalties from the 240 acres. It would seem equitable that the difference should be apportioned between the lease-

holders in proportion to their percentage of the total acreage in the lease.

Finally, Gold contends the trial court erred in refusing to grant a declaratory judgment and now seeks to have this court determine that Cherokee is liable for its proportionate share of the guaranteed royalty for *future* years. It phrases this contention as a declaratory judgment issue. In view of our decision on the merits herein, we believe a declaratory judgment is unnecessary.

" 'The relief contemplated by the declaratory judgment act (G.S. 1935, 60-3127 to 60-3132) [now K.S.A. 60-1701 *et seq.*] does not, in the absence of unusual circumstances or emergency features, include its use in pending actions to secure declarations on questions of law involved and in the process of determination therein, nor as a substitute for ordinary actions which afford reasonably adequate remedies.' Syl. ¶ 3.

. . . .

" ' "The courts will ordinarily refuse to entertain an action for a declaratory judgment as to questions which are determinable in a pending action or proceeding between the same parties. A declaratory judgment is not a proper mode of determining the sufficiency of legal defenses to a pending action. A disputed question of law or procedure raised in a pending suit is not such an actual controversy as comes within the letter, reason, or spirit of the declaratory judgments act.' " 151 Kan. at 331." *Ratley v. Sheriff's Civil Service Board*, 7 Kan. App. 2d 638, 640, 646 P.2d 1133 (1982) (quoting *Pugh v. City of Topeka*, 151 Kan. 327, 99 P.2d 862 [1940]).

Reversed and remanded to the district court for entry of judgment on Gold's counterclaim in accordance with this decision.