No. 38,114

Bowersock Mills and Power Company, *Appellee* v. L. E. Leath-
erock, D. S. Jackman, R. W. Magill, the Kansas Milling Com-
pany, and the Lawrence Milling Company, *Appellants.*

(226 P. 2d 854)

Opinion filed
January 27, 1951.

*Clarence M. Gorrill,* of Lawrence, and *J. D. James,* of Kansas City, Mo.,
argued the cause, and *A. C. Trippe,* of Kansas City, Mo., was with them on the
briefs for the appellants.

*John J. Riling,* of Lawrence, argued the cause, and *George K. Melvin,* of
Lawrence, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action by a lessor of a mill building, ma-
chinery and equipment to recover from the lessees an amount equiv-
alent to what it cost to repair a motor which became unusable dur-
ing the term of the lease.

A jury was waived and the action was tried by the court. The
plaintiff, Bowersock Mills and Power Company, a corporation, re-
covered a judgment against D. S. Jackman and his associates, lessees,
from which the latter have appealed. The principal portion of the
lease contract involved reads:

"Fourth, It is further agreed between the parties that the lessees shall have
possession of the premises herein above leased, from the effective date of the
lease until the expiration of ·this lease and the lessees shall, during the term of
this lease, keep the premises in proper repair so as to keep them in good work-

ing condition, and return the leased property back to the lessor at the expiration of this lease in the same condition as said premises now are, ordinary wear and tear excepted, and if lessees should change the flow of the mill from its present status, and if the life of this lease shall extend its full three (3) years period, then the lessees shall restore the flow of the mill to its original status if the lessor so desires. Provided, however, that in event of any unusual structural defect whereby the structure of said facilities shall become unusable, then such structural defects shall be repaired by the lessor. . . ."

The trial court's final conclusions of fact were:

"1. The main bearing of the motor in question became overheated through no fault of the plaintiff or the defendants.

"2. The damage to the motor in question was the result of wear and tear, in the ordinary and customary use of such motor.

"3. After the collapse of the motor, a new one was purchased under an agreement between the parties hereto that the defendants would contribute toward such purchase an amount equal to what it would cost to repair the old one. It was also agreed between the parties that it would cost $2,442 to repair the old motor."

The court rendered judgment against defendants for that amount together with interest.

Appellants contend (1) the written lease placed the duty of repairing or replacing the motor on the lessor; (2) since lessor under the written lease was duty bound to repair or replace the motor, any later oral agreement by lessees for its replacement was without consideration; and (3) Abe Martin, superintendent of the Lawrence Milling Company, had no authority from the lessees to enter into a later oral agreement.

It first should be observed the contract contains no provision for the replacement of old machinery with new machinery. The contract pertains to obligations of the parties relative to repairs on existing machinery. In other words we find no contractual duties imposed on the lessor to replace an old motor, capable of being repaired, with a new motor.

Appellants, of course, do not complain concerning that portion of finding No. 1 which states the overheating of the main bearing of the motor was not their fault. Nor do they complain of finding No. 2. They agree with it. Appellants do not and, in our view of the record, cannot successfully contend there was no agreement which resulted in the installation of a new motor. There was direct and positive evidence to support finding No. 3. It is true there was also contrary evidence but on review we are not concerned with the latter but only with evidence which supports or tends to sup-

port findings made. (*In re Estate of Walker*, 160 Kan. 461, 163 P. 2d 359.)

Appellants' first contention with respect to finding No. 3 is the subsequent oral agreement was without consideration. If the oral agreement to install a new motor was supported by an independent consideration it is immaterial whose duty it was, under the original lease contract, to repair old motors. What we need to determine is whether there was such consideration.

Did the oral contract lack consideration? The lease was executed July 11, 1946, for a term of three years. The motor broke down in November, 1947. Over one half of the lease term remained. Under the terms of the lease contract it was to the mutual benefit and advantage of all parties to keep the mill in operation without interruptions and delays. This was an old motor. Manifestly a new motor would be more likely to insure uninterrupted operation until the termination of the lease than an old repaired one. The time element of getting the mill back into operation at the earliest moment was highly important to appellants. This was made exceedingly clear by the evidence of Abe Martin, appellants' superintendent of mill operations at Lawrence. The evidence disclosed it probably would require thirty days to repair the old motor while a new motor could be obtained and installed within four or five days. The cost of repairing the old motor was promptly ascertained and appellants were fully informed concerning such costs. On ample evidence the trial court found there was an agreement appellants would pay that amount on a new motor installed by appellee. Under these facts we have no hesitancy in concluding the subsequent oral agreement was not lacking in consideration. The inherent benefits of a new motor and the additional advantage to appellants resulting from the elimination of a month's loss of operation constituted valuable considerations for the oral agreement.

Appellants next contend Abe Martin, their superintendent of mill operations in the Lawrence plant, had no authority to enter into contracts on their behalf. That a mere superintendent of milling operations ordinarily does not possess power to contract generally for his employer may be conceded. There was evidence, however, appellee was directed from appellants' head office in Wichita to refer all matters pertaining to the operation of the mill to Mr. Martin and that such direction was followed. There was also some evidence appellants had paid for at least some repairs

in the past although the court excluded additional testimony on that subject which was later offered in order to show the interpretation the parties had placed on the lease contract with respect to the duty of making repairs. Finding No. 3 does not indicate the court considered only the acts of Martin in determining such an agreement was made. There was other evidence to support the finding or conclusion of fact.

The trial court was not obliged to limit its consideration concerning the validity of the oral agreement solely to the question of Martin's authority to contract. The court was justified in considering all pertinent facts and circumstances which disclosed or tended to show the agreement had actually been entered into. These included the fact appellants' insurance company, which had issued a policy covering electrical breakdowns, was immediately notified, its adjuster appeared promptly, participated in the conference relative to the cost of repairs, the installation of a new motor, and, in substance, agreed that company would pay to the the extent of such repairs if the motor collapsed by reason of an electrical breakdown. There was evidence this was the cause of the breakdown. Appellants' fire insurance company was likewise notified and its representative also made an investigation. In addition to the foregoing facts there was evidence appellee contacted L. E. Leatherock, general business manager of appellants' mill, and Dean McQuillen, head miller of appellants' mill, by telephone at the principal office in Wichita, concerning the motor. Insurance engineers and inspectors came to examine the motor. After the conference about buying a new motor instead of repairing the old one, at which Martin and an insurance representative were also present, Leatherock, in substance, advised appellee's secretary and manager by telephone from Wichita that if appellee desired to bring an action against appellants in Douglas county he would come to Lawrence in order that summons might be served on him there; that appellants were not disclaiming liability but wanted the suit filed in order to get the insurance companies to decide which one of them was liable. This testimony neither Leatherock nor anyone else denied. In fact from the record presented here it appears Leatherock did not take the witness stand.

Some other details might be narrated which tended to show it was understood appellants would contribute the ascertained cost of repairing the old motor towards the cost of a new one but we do

not deem it necessary to do so. If Martin lacked initial authority to contract the court was amply warranted in concluding the agreement was fully ratified and confirmed by appellants' general manager and that appellants admitted liability for the amount involved. That an unauthorized agreement, if this was unauthorized, may be effectively ratified and confirmed requires no demonstration with citation of authorities.

Decisions cited by appellants in support of their contention that a mere superintendent of milling operations has no general authority to enter into contracts for his principal have been examined. That general doctrine is not inconsistent with the conclusion the trial court reached on all the direct and circumstantial evidence adduced on the trial of this case.

The judgment is affirmed.