**MORRIS EXPLORATION, INC., Appellant,**

v.

**Flavio GUERRA, et al., Appellees.**

**No. 4–87–00579–CV.**

Court of Appeals of Texas, San Antonio.

May 31, 1988.

Hugh L. Scott, Jr., San Antonio, for appellant.

Mark D. Willett, Person, Withworth, Ramos, Borchers & Mor, Laredo, for appellee.

Before ESQUIVEL, CHAPA and BISSETT*, JJ.

## OPINION

BISSETT, Justice (Assigned).

This is an appeal from a summary judgment which declared that an oil, gas and mineral lease, dated August 1, 1980, between Flavio Guerra, et al, as lessors, and CanAm Energy, Inc., as lessee, hereinafter referred to as the "subject lease," had terminated. On February 3, 1987, Flavio Guerra, et al, plaintiffs in the trial court and appellees in this Court, filed suit against Morris Exploration, Inc., defendant in the trial court and appellant in this Court, for declaratory judgment, requesting (among other relief) that the court determine whether a certain oil, gas and mineral lease had terminated on the grounds: 1) there had been no production of oil or gas or other minerals in any quantities from March 4, 1986, and 2) once production had ceased, there had not been any drilling or reworking operations on the subject lease within sixty (60) days from date of cessation of production.

On May 29, 1987, plaintiffs filed their motion for summary judgment, together with a certified copy of the subject lease, and an affidavit setting forth certain facts.

On July 14, 1987, defendant filed a response to the aforesaid motion. Included in the response is an affidavit in support thereof. The motion for summary judgment was severed by the trial court from the remaining causes of action asserted by plaintiffs. On August 27, 1987, the trial court granted plaintiffs' motion. The judgment, in pertinent part, terminated the subject lease, and decreed that it was "no longer valid and subsisting." Defendant has duly and timely appealed from the order granting summary judgment.

The subject lease covered a 91.253443 acre tract in Webb County, Texas. Pertinent to their appeal are paragraphs 2, 3, 6 and 15 of said lease.

Paragraph 2 of the lease, in its entirety, reads:

Subject to other provisions herein contained, this lease shall be for a term of three (3) years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder.

Paragraph 3 of the lease provides for royalties of ⅛th of all oil produced and saved; on gas, royalties of ⅛th of the market value of gas sold or used off the premises or from lands with which the land covered by the lease are pooled. And, where there is a shut-in gas well on the land, or on the pooled acreage, it was provided that a sum of money equivalent to the annual rental payment $456.30) could be paid, annually, within 90 days after the well was shut-in, and, if so paid it would be considered that gas was being produced from the land.

Paragraph 6, in pertinent part, provides:

... if after discovery and production of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if lessee commences, operations for drilling or re-

---

\* Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T

CODE ANN. § 74.003 (Vernon 1988).

working within sixty (60) days thereafter . . .

Paragraph 15, in its entirety, reads:

Notwithstanding anything herein to the contrary, it is expressly agreed and understood that in the event production of oil, gas and other minerals is obtained from the above-described land and the aggregate of the royalties paid to lessor therefrom during any 12–month period of production amounts to less than $5.00 per acre per annum, for each acre subject to this lease during such 12–month period, then in that event, the lessee, its successors and assigns, agree to pay to lessor (within 60 days after the expiration of such 12–month period by depositing same to lessor's credit in the depository hereinabove named) the difference, if any, between the total amount of royalties paid to lessor from this lease during such 12–month period and the aggregate of $5.00 per acre for the acreage subject to this lease during such 12–month period.

Plaintiffs, in their motion for summary judgment, assert that the subject lease terminated according to its terms because there was no production of oil, gas or other minerals on the land covered thereby from and after March 4, 1986, and no drilling or reworking operations were conducted thereon within 60 days after the date of cessation of production. Their summary judgment evidence consisted of the subject lease and an affidavit. It was conclusively proved by such evidence: 1) on August 24, 1984, the defendant reworked Wells 1 and 2, located on the premises, and, on August 29, 1984, began producing oil from them; 2) production[1] was subsequently established in Wells 3, 4, 5, and 6; 3) there was no production of oil, gas or other minerals from the leased premises from and after March 4, 1986, and 4) there were no drilling or reworking operations conducted by anyone on the leased premises from and after March 4, 1986.

Defendant filed a response to plaintiff's motion for summary judgment. Its summary judgment proof consisted of an affi-

davit. It established that defendant, on or about February 24, 1987, tendered to plaintiffs a check for the minimum royalties pursuant to paragraph 15 of the lease; that plaintiffs refused to accept the check; and that a check in the amount of the minimum royalties was subsequently delivered to the registry of the trial court.

Defendant asserts two points of error. It contends that the trial court erred in granting summary judgment to plaintiffs because: 1) its compliance with the minimum royalty provision of the lease perpetuated the lease; and 2) issues of fact were presented. We disagree.

Defendant's position is that payment (or tender) "of the minimum royalty is tantamount to actual production, as would be the case with the payment of shut-in royalty as the payment of shut-in royalty is equivalent to actual production." It, in support of that position, relies upon *Morriss v. First National Bank of Mission*, 249 S.W.2d 269 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.). The reliance is misplaced. That case is distinguishable on the facts from the instant case.

The controversy in *Morriss* was whether under the terms of the lease, the payment of the "shut-in royalty" from a shut-in gas well plus the difference between that sum of money and the minimum royalty required to be paid under paragraph 14 of the lease was "royalty, or something else," such as rents or bonuses. Here, the controversy is whether the tender of the minimum royalty perpetuated the lease, absent actual production or the commencement of drilling or reworking operations within the prescribed time limits. Also, in *Morriss*, there was a shut-in gas well on the premises; here, there is no evidence that there was a shut-in gas well on the land covered by the subject lease, or on lands with which it had been pooled.

Paragraph 15 of the subject lease associates itself with paragraph 3, the basic royalties provision. Paragraph 15 supplements paragraph 3, and becomes operative *only* where the basic royalties from *pro-*

---

**1.** The affiant did not state whether the "production" was oil or gas, or both.

*duction* from any twelve month period of production is less than "$5.00 per acre per annum." Therefore, where the basic royalties for any given twelve months of production are less than $456.27, then minimum royalties for the difference between the amount of basic royalties actual paid and the sum of $456.27 are due and payable. It follows that there must be actual production and actual basic royalties due (paid or payable), before any minimum royalties are to be paid.

Paragraph 15 of the subject lease does not provide that where there is no production of oil, gas or other minerals, or no drilling or reworking operations within a stated period of time after production ceases, that the lessee may pay the minimum royalties, and if such payment is made within a certain period of time, that the lease will not terminate, as is the case where there is a shut-in gas well. There is nothing in the subject lease which will continue the lease in force and effect simply by the payment of minimum royalties. The subject lease terminated on the sixty-first day following the cessation of production on March 4, 1986. The tender of minimum royalties on or about February 24, 1987 (which was after plaintiffs had filed suit against defendant) was long after the lease had terminated.

There are no issues of fact in this case to be resolved by the trier of fact. The facts are undisputed, and under the undisputed facts, it is conclusively established that the subject lease terminated by its own terms.

The case at bar is a case where the oil, gas and mineral lease terminated by its own terms. A principle of forfeiture is not presented. *See Geo–Western Petroleum Development, Inc. v. Mitchell,* 717 S.W.2d 734 (Tex.App.—Waco 1986, no writ); *Woodson Oil Company v. Pruett,* 281 S.W.2d 159 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.).

The movant for summary judgment must establish his right thereto on the issues expressly presented to the trial court in his motion (for summary judgment) by conclusively proving all essential elements of his cause of action or defense as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64 (Tex.1972). Plaintiffs met their burden. It is conclusively shown by their summary judgment evidence: 1) production of oil was established, and after the primary term expired on August 1, 1983, production ceased on March 4, 1986; and 2) no drilling or reworking operations were conducted on the leased premises within sixty days following the date of cessation of production. Therefore, the lease automatically terminated pursuant to the provisions of paragraphs 2 and 6 thereof.

Where the facts presented by the movant in a summary judgment are undisputed, the non-movant, in order to establish a fact issue, must present a written response to the motion setting out his contentions and must present summary judgment proof in support thereof. TEX.R.CIV.P. 166–A; *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). Defendant in this case did not meet its burden. The only summary judgment proof presented by it did not create a fact issue.

We have considered both of defendant's points of error. The are overruled.

The judgment of the trial court is affirmed.

