(17 P. 3d 957)
No. 83,055
No. 84,518

CIMARRON FEEDERS, a Kansas partnership, in its own right, and as a member of and on behalf of CIMARRON DAIRY, L.C., *Plaintiff/Appellee*, v. JOHAN BOLLE, *Defendant/Appellant*, v. TIM DEWEY CATTLE CO., SCHARTZ CATTLE, INC., TIM DEWEY, JOE SCHARTZ, TIM DEWEY FARM & CATTLE CO., and SCHARTZ LAND, INC., *Additional Defendants/Appellees.*

Opinion filed January 5, 2001.

*J. Eugene Balloun and Scott C. Nehrbass*, of Shook, Hardy & Bacon, L.L.P., of Overland Park, and *Jack W. Shultz*, of Shultz & Shultz, Chartered, of Dodge City, for the appellant.

*Stephen M. Kerwick* and *David J. Rebein*, of Foulston & Siefkin, L.L.P., of Wichita, for the appellees.

Before LEWIS, P.J., WAHL, S.J., and PATRICK D. MCANANY, District Judge, assigned.

LEWIS, J.: Prior to 1994, appellant Johan Bolle was a dairy farmer in the state of Arizona, and Tom Dewey and Joe Schartz were operating a feedyard in Kansas under the name of Cimarron Feeders. At some point in 1994, Dewey and Schartz decided to go into the dairy business. Dewey and Schartz were not familiar with the dairy business, so they conducted a search for someone who was familiar with that type of business to join them in the venture. Bolle was the result of that search. The dairy operation ultimately established was a total failure despite the apparent best efforts of everyone involved. During the period of time the parties struggled to operate the failing dairy, Bolle executed and delivered to Dewey and Schartz a note and security agreement. After the business failed, Dewey and Schartz filed the instant action against Bolle, seeking to recover on his note and security agreement. The jury returned a verdict in favor of Dewey and Schartz, and Bolle appeals.

The story began in 1983 when Dewey and Schartz formed Cimarron Feeders to operate a cattle feedyard in Gray County. Cimarron Feeders was a partnership consisting of Tim Dewey Cattle Company, Inc., a corporation owned by Tim Dewey, and Schartz Cattle, Inc., a corporation owned by Joe Schartz. The record indicates that Dewey and Schartz formed these corporations to be the partners in the feedyard operation so as to protect their other assets from liabilities incurred in the feedlot business. Among the parties to this action are several corporations. The lawsuit was in-

stituted by Cimarron Feeders, a partnership, and Cimarron Dairy, L.C., now the appellees. The original defendant was Bolle, and Bolle added Tim Dewey Cattle Company, Schartz Cattle, Inc., Tim Dewey, Joe Schartz, Tim Dewey Farm and Cattle Company, and Schartz Land, Inc., as additional defendants, who are also appellees. In this opinion, for the purposes of clarity, when we refer to Dewey and Schartz, we intend to include in that reference the respective corporations which are parties to this action.

As pointed out above, in 1994, a decision was made to establish a dairy business by Dewey and Schartz. Since they had no experience in the dairy business, they decided to look for someone who had experience who would enter into the venture with them and who could operate the dairy. After making a number of inquiries, Dewey and Schartz ultimately contacted Bolle, who was in the dairy business in Arizona. After several meetings of the parties, Bolle agreed to join with Dewey and Schartz in establishing a dairy operation in the state of Kansas. Ultimately, Bolle, Dewey, and Schartz formed Cimarron Dairy, L.C., a limited partnership.

During the negotiations all of the principals were represented by attorneys. Bolle was represented by his own attorney, Lupe Iniguez, who was a partner in a 30-lawyer firm in Arizona and had been in the practice for approximately 20 years. Bolle was also represented by his own accountant during the negotiations. Dewey and Schartz were represented by Kyler Knobbe, who also represented Cimarron Feeders.

Bolle testified that during the negotiations he did not know and was never advised that the Cimarron Feeders partnership was composed of two partners, both of which were corporations. He insisted he told Dewey and Schartz he would never become involved in a dairy operation in which his partners were corporations. Dewey and Schartz, on the other hand, testified they advised Bolle that the partners in Cimarron Feeders were corporations. Bolle also testified that Dewey and Schartz did not inform him that the Cimarron Feeders had a long history of operating losses.

Ultimately, Bolle entered into a written operating agreement to form Cimarron Dairy, L.C., in July 1994. The operating agreement

was signed by Dewey and Schartz as if they were personally and individually the partners in Cimarron Feeders.

During the negotiations, Bolle estimated that if he sold his entire dairy herd and other assets in Arizona, he could contribute about $500,000 to the dairy operation.

The first agreement between the parties provided that profits and losses were to be distributed to each partner proportionately to their ownership shares. It was understood that Cimarron Feeders would provide at least twice the capital for the venture but that Bolle would have equal management rights. Bolle was to own one-third of Cimarron Dairy, L.C., with the option to increase his ownership interest to one-half at the end of 1998. In addition, Bolle was to be paid a salary of $40,000, and Cimarron Feeders was to receive a salary of $20,000 per year from the dairy operation.

The dairy business was beset with problems from the outset. To begin with, there was difficulty in selling and transferring Bolle's herd from Arizona to Kansas. Many of the cattle were in poor health, and some stopped milk production. Cimarron Dairy, consequently, experienced several financial setbacks. The death and cull rates were very high. In addition, in May 1996, a tornado struck the dairy. This shock apparently caused a number of the cattle to cease milk production, further causing more financial setbacks to the dairy operation.

As a result of financial setbacks, the dairy was required to borrow substantial amounts of money. These loans were taken out by Dewey and Schartz. Bolle made no further contributions, nor did he make any further payments of losses. Dewey and Schartz contributed additional capital by way of borrowing money in amounts exceeding $1 million beyond their original contribution under the basic agreement.

Bolle testified that although he was to have equal management authority in the dairy business, Dewey and Schartz repeatedly ignored his advice. In March 1996, Dewey and Schartz advised Bolle that Dewey would thereafter be in charge of all management matters. Bolle, despite his status as an equal partner under the original agreement, was assigned to the sick barn to manage the care and milking of sick cows.

In December 1995, Dewey and Schartz prepared a revised operating agreement and presented it to Bolle. This agreement reduced Bolle's interest in the dairy by half. In addition, Bolle was asked to sign a promissory note to Cimarron Feeders in the amount of $236,761 and a security agreement pledging his interest in the dairy as security for the note. For unaccountable reasons, Bolle signed the second operating agreement and acceded its terms. He did so despite the advice of his wife, his attorney, and his tax attorney, all of whom advised him not to sign the revised operating agreement. In fact, it appears that Bolle told Dewey and Schartz he would not sign the agreement but that after a long meeting, he was persuaded to sign by the fact that Dewey and Schartz had covered all the losses of the dairy by borrowing money and making additional capital contributions.

Bolle's interest in and control of the dairy business disappeared in the fall of 1996. At that time, Dewey and Schartz hired Don Logan to manage the dairy business and gave Logan complete control. We note, however, that Logan did not improve the operation of the dairy. By this time, things had reached such a state that Bolle was suffering from clinical depression and was unable to carry out simple tasks concerning the operation of the dairy. In February 1997, Logan sent Bolle a memo, advising him that he would henceforth be paid on the basis of an hourly wage of $9.50 per hour. This appears to have been the last straw because Bolle then sought the advice of counsel and advised Dewey and Schartz that the proposed change in his salary was not acceptable. In this letter, he expressed concerns about the parties violating his right to equal management and requested that they honor the agreement by giving him advance notice of the meetings and allowing him to participate in management decisions.

The response of Cimarron Feeders to Bolle's demands was to file the instant action against Bolle, seeking judgment on the note and foreclosure of the security interest. Bolle answered, asserting several counterclaims and cross-claims, and the matter was tried to a jury. Bolle claimed fraud in the inducement and lack of consideration. The jury returned a verdict for Cimarron Feeders, awarding judgment against Bolle and in favor of Cimarron Feeders

for $301,408.10, along with interest on the note and security agreement and an additional judgment of $1,085,772, which represented Bolle's responsibility for Cimarron Dairy, L.C., losses. Bolle was denied judgment on his claims for fraud and breach of fiduciary duty. This appeal followed.

Bolle failed to file a supersedeas bond in order to stay execution on the judgment awarded to Cimarron Feeders. Cimarron Feeders then filed a motion for an order directing sale of personal property with the district court. Bolle responded by asking the trial court to exercise its discretion to deny the motion and stay execution until this appeal had been determined. The trial court found that it had no discretion in the matter and issued a writ of special execution; the sale was had, and the trial court confirmed the sale of Bolle's interest in the dairy to Cimarron Feeders for $100,000. The judgment against Bolle was credited with the payment of $100,000, leaving an unpaid judgment at this time in the amount of $1.3 million plus interest.

Bolle raises a number of issues on appeal.

## BURDEN OF PROOF OF JURY INSTRUCTIONS

The first issue Bolle raises concerns the trial court's instructions to the jury concerning burden of proof. Our standard of review is well known on this issue:

" ' " 'It is the duty of the trial court to properly instruct the jury upon a party's theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal.' " ' [Citations omitted.]" *Haskell v. Stauffer Communications, Inc.*, 26 Kan. App. 2d 541, 542, 990 P.2d 163 (1999).

During the trial, Bolle asserted the following claims or defenses:

(1) the defense of fraud in the inducement as to the enforceability of the promissory note and the revised operating agreement;

(2) the defense of failure of consideration regarding the enforceability of the promissory note and the revised operating agreement;

(3) the claim of fraud in the inducement as to the original operating agreement; and

(4) the claim of breach of fiduciary duties.

The trial court instructed the jury that Bolle had to prove "by clear and convincing evidence" those claims and defenses.

Bolle argues that the trial court erred in instructing the jury that his burden of proof was one of "clear and convincing evidence." He does not argue that the trial court erred in applying the clear and convincing evidence standard to his fraud claims; however, he does argue strongly that the trial court erred in applying that standard to his claims of failure of consideration and to his claim for breach of fiduciary duties. He also argues that the trial court failed to advise the jury that the term clear and convincing evidence applies to the quality of the evidence but not to the quantity of that evidence.

We first consider the failure of consideration defense. This defense was not directed at the original operating agreement but at the revised operating agreement and the promissory note. Bolle's attack as to those items was that they were not enforceable because they were lacking in consideration. The trial court instructed the jury that Bolle's burden of proof was to prove this defense by clear and convincing evidence.

As a general rule, the standard of proof in a civil action is proof by a preponderance of the evidence. *Ortega v. IBP, Inc.*, 255 Kan. 513, 518, 874 P.2d 1188 (1994). There are some actions, however, such as fraud which require proof by clear and convincing evidence. Clear and convincing evidence has been described by the United States Supreme Court as an intermediate standard of proof. *Santosky v. Kramer*, 455 U.S. 745, 756-57, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982).

The Kansas Supreme Court has noted that "clear and convincing evidence is not a quantum of proof but, rather, a quality of proof. . . . It is clear if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it." *Ortega*, 255 Kan. at 528.

The standard of evidence required to attack the effect of a written document is clear and convincing evidence. *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 86, 630 P.2d 1107 (1981). In this case, however, Bolle is not attacking the meaning or words of the revised operating agreement or the promissory note. He is arguing that neither is supported by consideration.

It is axiomatic that a contract in order to be enforceable must be supported by adequate consideration. K.S.A. 16-107. In this state, "consideration is sufficient if there is a benefit to the debtor or an inconvenience or deprivation to the creditor." *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 50, 697 P.2d 858 (1985). K.S.A. 16-108 provides: "The want or failure in the whole or in part, of the consideration of a written contract, may be shown as a defense, total or partial, as the case may be, in an action on such contract, brought by one who is not an innocent holder in good faith." There is a presumption that a written instrument is supported by consideration. To overcome that presumption, a party need only produce substantial competent evidence, and there is no requirement that "clear and convincing evidence" is needed to overcome the presumption of consideration and to mount a successful failure of consideration defense. See *Ludwick*, 237 Kan. at 50.

We conclude that there is nothing in the Kansas law to require substantial competent evidence of a clear and convincing nature to prove the defense of lack of consideration. The trial court's instruction to the jury that clear and convincing evidence was required to prove this defense was erroneous.

It is possible that this error in the instruction to the jury, if it were the only error in this case, could be disregarded as harmless. However, as pointed out later in this opinion, we believe that this is one element of a succession of erroneous instructions which require that we reverse the verdict in favor of the appellees.

Bolle next argues the trial court erred in instructing the jury that he had to prove his breach of fiduciary duties claim by clear and convincing evidence. In *Tenneco Oil Co. v. Joiner*, 696 F. 2d 768, 777 (10th Cir. 1982), the concurring opinion stated: "When a principal sues its agent for breach of fiduciary duty, the 'clear and convincing evidence' standard is not applicable."

Our research has revealed no Kansas case which indicates there is a clear and convincing standard for breach of fiduciary duties. This leads us to conclude that issue is judged, as are most issues in this state, by a preponderance of the evidence standard. Despite this fact, the trial court instructed the jury that it had to find that the partners of Cimarron Feeders violated their fiduciary duties by clear and convincing evidence. We conclude that this instruction by the trial court was erroneous and placed a heavier burden on Bolle than is required by the law.

Once again, we note that if this were the only error in this case, we very well might consider it to be harmless. It is, however, the second instance in which Bolle's burden of proof was misstated by the trial court in its instructions to the jury.

Bolle next argues that the trial court should have clarified the clear and convincing evidence instruction by advising the jury that the standard referred to quality of evidence rather than quantity. As pointed out earlier, our Supreme Court has made it clear that "clear and convincing evidence is not a quantum of proof but, rather, a quality of proof." *Ortega*, 255 Kan. at 528. We believe that under the circumstances, the trial court erred in failing to clarify the standard of proof required. We note the clarification that "clear and convincing evidence" refers to the quality of proof and not the quantity of proof is not part of the PIK instructions concerning burden of proof. However, in this case, we conclude the trial court erred in refusing to clarify its instruction in accordance with our Supreme Court's statement in *Ortega* as set forth above.

Any one of these errors by the trial court concerning burden of proof standing alone would probably be considered as harmless. However, the trial court committed not one but three errors in instructing the jury concerning Bolle's burden of proof.

We believe that parties to a legal action in this state are at the very least entitled to a proper instruction concerning the burden by which he or she must prove his or her claim. The trial court failed to meet that standard in this case, and we conclude that under the circumstances shown, this failure was prejudicial and multiple and requires that we reverse the judgment entered in favor of the appellees in this matter.

## KANSAS UNIFORM PARTNERSHIP ACT

In instructing the jury, the trial court utilized the Kansas Uniform Partnership Act, K.S.A. 1999 Supp. 56a-101, *et seq.*, and specifically K.S.A. 1999 Supp. 56a-404, in instructing the jury on the fiduciary duties which the partners in Cimarron Dairy, L.C., owed one another. Bolle argues that the trial court erred in applying the language regarding fiduciary duties in the partnership act to the relationships in a limited liability company. Bolle further argues the trial court erred in applying the partnership act retroactively since it only came into effect on January 1, 1999.

We conclude that Bolle's argument is without merit. It appears to us the trial court did not attempt to apply K.S.A. 1999 Supp. 56a-404; rather, the trial court simply utilized some of the language in the statute for guidance on the breach of a fiduciary duty. In deciding this issue, we see no need to analyze fiduciary duties of one partner to another or to the retroactive application of the statute. We have examined the instructions and see no particular error in the law as given to the jury on the issue of breach of fiduciary duties. We have further concluded that none of Bolle's theories were restricted in any way by the instruction given to the jury.

In addition, we conclude that Bolle did not object to the fiduciary duties jury instruction beyond the clear and convincing objection which we have previously discussed. It is clear that when an instruction is not objected to, it is not to be considered reversible error unless it is clearly erroneous. K.S.A. 60-251(b); *Bright v. Cargill, Inc.*, 251 Kan. 387, 409, 837 P.2d 348 (1992). " 'An instruction is clearly erroneous when the reviewing court reaches a firm conviction that, if the trial error had not occurred, there was a real possibility that the jury would have returned a different verdict.' " *Jackson v. City of Kansas City*, 263 Kan. 143, 148, 947 P.2d 31 (1997). We are unable to reach that conclusion in this case; therefore, the instruction is not clearly erroneous, and Bolle's failure to object requires that we affirm the trial court in regard to this issue on the instruction of fiduciary duties.

## TESTIMONY OF ACCOUNTANT

The trial court permitted Cimarron Feeders' accounting expert

to express his opinion as to whether the revised operating agreement and promissory note were fair to Bolle. Bolle objected to this testimony. In essence, in response to a question by the attorneys for Dewey and Schartz, the accountant testified that the revised operating agreement and promissory note, which reduced Bolle's share from one-third to one-sixth, was "probably fair" because "it cut the amount of capital contributions that [Bolle] had to make."

A trial court has broad discretion concerning the qualification of an expert witness and the admissibility of expert testimony. Expert opinion testimony is admissible if it aids the jury with unfamiliar subjects or in interpreting technical facts or assists the jury in arriving at a reasonable factual conclusion. If the normal experience and qualifications of the jurors permit them to draw proper conclusions from the given facts and circumstances, expert conclusions or opinions on that subject are not admissible. *Simon v. Simon*, 260 Kan. 731, 735, 924 P.2d 1255 (1996).

An expert witness may give an opinion on the ultimate issue but may only do so insofar as it aids the jury in interpreting technical facts or assists the jury in understanding the material in evidence. An expert witness has no right to pass on the weight or credibility of evidence; these are matters strictly within the province of the jury. *State v. Mullins*, 267 Kan. 84, 94, 977 P.2d 931 (1999).

Bolle argues that by allowing the accountant to state his opinion as to the "fairness" of the contract, the trial court invaded the province of the jury.

We conclude that the normal experience possessed by jurors should permit them to determine whether a particular agreement is "fair" or not. A necessary corollary of that decision is that the trial court erred in permitting the accountant to give his testimony on the issue of whether the agreement was fair. We hasten to note, however, that we see no particular problem with the accountant stating that in his opinion, the revised agreement reduced Bolle's interest but also reduced his liability. Our problem is with his statement that in his opinion, the agreement was fair. This invaded the province of the jury to the extent that the concept of "fairness" was relevant and was an error by the trial court.

## SUPERSEDEAS BOND

After the judgment was entered against Bolle, he did not file a supersedeas bond; however, he did ask the court to exercise its discretion, to deny the writ seeking an order of sale, and to stay the execution of the sale while the rights of the parties were determined in a pending appeal. The trial court found it had no discretion and was required to issue the writ in the absence of a supersedeas bond.

We believe the trial court erred in determining that it had no discretion. The trial court had discretion to stay the writ of execution regardless of the posting of a supersedeas bond. However, the sale has taken place and has been confirmed, and the issue is moot. Accordingly, we do not reach this issue.

## CONFIRMATION SALE

The trial court confirmed the sale of Bolle's interest in the dairy to Cimarron Feeders for $100,000. Since the judgment against Bolle was over $1 million, the $100,000 credit left Bolle still owing an outstanding judgment of $1.3 million plus interest.

On appeal, Bolle argues the trial court erred in failing to have an evidentiary hearing on the issue of whether the sale should be confirmed. We agree.

K.S.A. 60-2415 controls the confirmation of a sheriff's sale and provides:

"(a) The sheriff shall at once make a return of all sales made under this article to the court. All taxes due or delinquent shall be noted on the sheriff's return. If the court finds the proceedings regular and in conformity with law and equity, it shall confirm the same, direct the clerk to make such an entry upon the journal and order the sheriff to make to the purchaser the certificate of sale or deed provided for in this article.

"(b) The court may decline to confirm the sale where the bid is substantially inadequate, or in ordering a sale or a resale, may, in its discretion, if conditions or circumstances warrant and after a proper hearing, fix a minimum or upset price at which the property must be bid in if the sale is to be confirmed; or the court may, upon application for the confirmation of the sale, if it has not theretofore fixed an upset price, conduct a hearing to establish the value of the property, and as a condition to confirmation require the fair value of the property be credited upon the judgment, interest, taxes and costs. A sale for the full amount of the judgment, taxes, interest and costs shall be deemed adequate."

Thus, a trial court may decline to confirm a sale where the bid is substantially inadequate. On the other hand, the statute would require an order of confirmation if the sale was adequate. Prior decisions of this court have required that the trial court's decision to affirm a sale be supported by the record. *Farm Credit Bank of Wichita v. Zerr*, 22 Kan. App. 2d 247, 255, 915 P.2d 137 (1996); *Olathe Bank v. Mann*, 17 Kan. App. 2d 112, 116-17, 834 P.2d 1365 (1992), *aff'd* 252 Kan. 351, 845 P. 2d 639 (1993). In this case, there was no evidence at the confirmation hearing supporting the value of the property sold. Cimarron Feeders purchased Bolle's interest in the property for a sum substantially less than the full amount of the judgment, taxes, interest, and costs. No hearing was held to determine whether the sale amount was adequate.

We conclude the trial court erred in not holding an evidentiary hearing to determine whether the sale price was adequate. However, in view of our decision to reverse the judgment in favor of Dewey and Schartz, this issue is moot, and we deal with it only in the event it should occur after a retrial has been had.

We reverse the trial court's decision in favor of Dewey and Schartz. The errors by the trial court in instructing the jury and in permitting erroneous expert testimony may have been harmless in and of themselves. However, when considered collectively, we consider these errors to be so great as to require that we reverse the judgment in favor of Dewey and Schartz. In doing so, we conclude that the totality of circumstances and trial court errors substantially prejudiced Bolle and denied him a fair trial. Accordingly, remand the matter for a new trial consistent with this decision.

In taking this action, we are aware that Bolle's interest in the dairy has been sold and that sale has been confirmed. Our decision to reverse the judgment in favor of Dewey and Schartz necessarily results in a decision to set aside the execution, sale, and confirmation of that sale. We have no idea as to how to restore the status quo between these parties and leave that issue to be determined upon remand.

Affirmed in part, reversed in part, and remanded with directions.