(240 P.3d 592)
No. 102,150

CHARLES F. PALMER and DOLORES PALMER, husband and wife, *Appellees/Cross-appellants,* v. BILL GALLAGHER ENTERPRISES, L.L.C., *Appellant/Cross-appellee.*

Opinion filed September 24, 2010.

*Ryan M. Peck* and *Clinton M. Goos*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, and *Kurt F. Kluin*, of Kluin Law Office, LLC, of Chanute, for appellant/cross-appellee.

*W.J. Fitzpatrick*, of Fitzpatrick & Bass, of Independence, for appellees/cross-appellants.

Before HILL, P.J., PIERRON and LEBEN, JJ.

HILL, J.: Charles and Dolores Palmer granted a 2-year oil and gas lease on their farm in 1996. The lessee drilled one gas well on the property, but it has never produced any oil or gas. The lease has a minimum-royalty clause calling for the Palmers to receive at least $1,000 every year, beginning with the second year of the lease. The lease called for this minimum royalty to come either from production earnings or, if there was inadequate production, by the lessee paying the Palmers the difference. Every year, from 1998 through 2005, the Palmers received $1,000 from the lessee. Kansas courts will not intervene to extend an oil and gas lease beyond the agreed terms of the parties. Here, because there was no production of oil and gas in paying quantities and no clause in the lease extending it, we hold this lease expired at the end of its 2-year primary term. Also, the $1,000 yearly payment did not extend the lease beyond its primary term because the money did not come from oil or gas production. Moreover, we cannot consider those annual payments a benefit to the Palmers (necessary to create an estoppel) because after the lease expired, the Palmers were entitled to all the oil and gas produced—less the costs of production. Therefore, we affirm the district court's ruling on this point. Similarly, we

affirm the district court's holding that a claimed written "ratification" of the lease was ineffective for lack of consideration since the lessee tendered nothing of benefit to the Palmers to induce them to sign the document.

Despite our holding, we must vacate the amount of the attorney fees awarded to the Palmers. We do not question the grant of fees to the Palmers, but do question the amount awarded. The district court failed to analyze the question and offered no reasons for its ruling. Therefore, we remand the fee question for further analysis by the court, asking it to consider the eight factors set out in Supreme Court Rule 1.5(a) (2009 Kan. Ct. R. Annot. 460) when it addresses the matter.

*The Palmers signed a lease; the lessee drilled a dry hole and then assigned the working interest to another company.*

Charles F. and Delores Palmer granted an oil and gas lease to KanMap, Inc. for their farm in Wilson County in 1996. The primary term of the lease was 2 years. KanMap drilled a single gas well on the property in 1997. Since then, there has been no production of oil or gas from the leased land. After that, KanMap annually paid the Palmers $1,000 as minimum royalty from 1998 through 2003.

Then in April 2004, Bill Gallagher Enterprises, L.L.C., bought the working interest in the lease. After that, Gallagher paid the Palmers $1,000 in 2004 and 2005 near the anniversary of the lease. In May 2006, at Gallagher's request, the Palmers signed a ratification of the lease. Gallagher did not make any payment to the Palmers at the time they signed the ratification or at any time after.

A few months later, in July 2006, the Palmers authorized their attorney to notify Gallagher the lease was forfeited because there was no production. In response, Gallagher contended the lease was still valid and continued to mail $1,000 checks to the Palmers from 2006 to 2008. But the Palmers returned those checks, uncashed, to Gallagher. After Gallagher filed an affidavit with the register of deeds asserting the lease was still in effect, the Palmers filed an action to cancel the lease.

Eventually, the court tried the case and the Palmers prevailed. After the district court decided that a shut-in royalty clause was stricken from the lease, and was therefore inapplicable, the court decided only production of oil or gas in paying quantities could extend the lease beyond its primary term. Thus, after the court found the well drilled on the leased land was not producing in paying quantities, it concluded the lease expired at the end of the 2-year primary term.

Next, the court concluded the $1,000 annual payment made according to the minimum-royalty clause of the lease did not extend the lease past the primary term because a minimum-royalty clause can only extend a lease if the royalties come from actual production. Moreover, the district court held the doctrine of estoppel could not extend a lease already expired by its own terms.

Finally, the district court ruled that the written ratification of the lease was unenforceable because it was made without consideration and was not knowingly and intelligently executed by the Palmers. The district court granted the Palmers reasonable attorney fees and costs.

Now, Gallagher contends the district court erred when it ignored the minimum-royalty payments made to the Palmers. In Gallagher's view, either by the operation of the minimum-royalty clause or through the application of the doctrine of equitable estoppel, this lease survived beyond its primary 2-year term. Additionally, Gallagher contends the court erred when it ruled the ratification agreement failed for lack of consideration or that the Palmers did not make the agreement knowingly and intelligently. Finally, Gallagher asserts the court abused its discretion by awarding attorney fees to the Palmers.

In turn, in their cross-appeal, the Palmers argue the district court did not award enough attorney fees.

*The $1,000 payments did not save this lease from expiration.*

First, we examine the question of the effect of the minimum-royalty clause found in this lease. We conclude it does not revive this expired lease. Next, we look at the issue of equitable estoppel. Based on our assessment that the payments were not a benefit to

the Palmers and were never made in a way that would indicate to the Palmers that the lessees asserted the Palmers' acceptance would prolong the lease, the Palmers are not now equitably prevented from arguing the lease is terminated. We view this matter as an interpretation of a written contract along with a determination of its legal effect. Thus, we exercise an unlimited standard of review. See *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006).

The heart of every oil and gas lease is the habendum clause, sometimes called the "to have and to hold" clause. In it, the landowner allows the lessee "to have" access to the property to explore for oil and gas and develop the property if possible. This provision of an oil and gas lease defines how long the interest granted to the lessee will extend. Typically, oil and gas leases provide for a primary term—a fixed number of years during which the lessee has no obligation to develop the premises—and a secondary term lasting as long as oil and gas is produced in paying quantities, once development takes place. See Black's Law Dictionary 778 (9th ed. 2009). In this lease the primary term was 2 years.

Sometimes oil and gas leases have a shut-in royalty clause. In such cases, a working interest owner that operates a nonproducing gas well may choose to "shut in" the well and cease production and wait for a more favorable gas market. But in order to prolong the life of the lease, since there is no production, the working interest owner must pay a royalty—fixed by the shut-in royalty clause— to the landowner. In those cases, the courts view the shut-in royalty clause as a part of the habendum clause. See *Welsch v. Trivestco Energy Co.*, 43 Kan. App. 2d 16, 22, 221 P.3d 609 (2009).

But here, after examining the lease in question, the district court decided the shut-in royalty clause had been stricken from the lease when it was signed and therefore it could not save this lease. Gallagher takes no issue with this ruling in its brief, and we therefore deem the matter abandoned by Gallagher. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

Instead, Gallagher contends the minimum-royalty clause of this lease serves the same purpose as a shut-in royalty clause. That clause states: "Lessee shall receive a minimum royalty of $1,000.00

beginning at the end of the second year, either through actual production or by a [sic] paying the difference of actual royalty paid and the amount due by a payment within 30 days of the annual anniversary date of this lease." We are not persuaded by this argument.

We must reject Gallagher's contention on this point for several reasons. First, the language of the clause itself does not say the payments will extend the lease into the secondary term. Also, this minimum-royalty clause does not indicate that the parties to the lease consider making those payments the same as if gas is being produced within the meaning of the habendum clause. With no such language, we cannot view this clause as part of the habendum clause. Therefore, we do not believe the payment of the minimum royalty extends the lease past the primary term. Furthermore, minimum-royalty payments have always been viewed as royalties and not as rentals. *Cherokee Resources, Inc. v. Gold Energy Corp.*, 11 Kan. App. 2d 436, 438-39, 724 P.2d 695 (1986).

Although there are no Kansas cases on this issue, a panel of the Texas Court of Appeals determined that the satisfaction of a minimum-royalty clause does not extend the lease beyond the primary term. See *Morris Exploration, Inc. v. Guerra*, 751 S.W.2d 710, 712-13 (Tex. App. 1988). The court stated: "It follows that there must be actual production and actual basic royalties due (paid or payable), before any minimum royalties are to be paid." 751 S.W.2d at 713. In Texas, with no actual production, the clause was inoperable. Even though the minimum-royalty clause in this case and the minimum-royalty clause in *Guerra* are not identical, the concept is the same; neither clause modifies or becomes an integral part of the habendum clause in any way that extends the lease into the secondary term. The secondary term here only starts with production in paying quantities. Therefore, this clause cannot be used in the same way as a shut-in royalty clause to extend the lease beyond the primary term into the secondary term. Thus, this lease terminated according to its own terms in November 1998 because no oil or gas was produced from the leased land.

*Equitable estoppel is not at play here.*

The weight of oil and gas authority persuades us that the $1,000 payments the Palmers accepted do not prevent them from arguing their lease has expired by its own terms. A review of the law of equitable estoppel is helpful at this point:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby it is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party seeking to invoke equitable estoppel must show that the acts, representations, admissions, or silence of another party (when it had a duty to speak) induced the first party to believe certain facts existed. There must also be a showing the first party rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. There can be no equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved. Estoppel will not be deemed to arise from facts which are ambiguous and subject to more than one construction. [Citation omitted.] A party may not properly base a claim of estoppel in its favor on its own wrongful act or dereliction of duty, or for acts or omissions induced by its own conduct. [Citation omitted.]" *Gillespie v. Seymour*, 250 Kan. 123, 129-30, 823 P.2d 782 (1991).

Neither KanMap nor Gallagher ever told the Palmers that if they accepted the $1,000 payments, their acceptance would serve to prolong this lease beyond the primary 2-year term. There is no language in the lease to that effect. How then can the lessee, Gallagher, validly argue their acceptance of the payments induced Gallagher to believe the lease was still valid? It seems more likely that both lessees, first KanMap and then Gallagher, treated the payments as some sort of rental payment, and no provision in the lease allows a delayed rental payment.

When applying equitable estoppel in the oil and gas arena, the authorities look at the nature of what the lessor receives. Generally, if the landowner, the lessor, receives *a benefit* from the payment of royalties, then the lessor is estopped from asserting that the lease terminated. But if the lessor did not receive a benefit from the payment of royalties, then the lessor should not be estopped from claiming the lease terminated. 3 Kuntz, Oil and Gas § 43.2, pp. 452-56 (1989). "[I]t is generally held that if a lessee should continue to make royalty payments to the lessor after the lease has terminated according to its own terms, the receipt of such payments will

not work an estoppel against the lessor, and such lessor may nevertheless assert that the lease has terminated." 3 Kuntz, Oil and Gas § 43.2, p. 455 (1989).

The reasoning behind this conclusion is straightforward. If the operator is still producing gas or oil under an expired lease, the lessor is entitled to all of the earnings from production, not just a fraction. When viewed this way, the acceptance of a part of the proceeds is not a benefit to the lessor since the lessor is due all of the value from the production of oil and gas from the leased land. Therefore, because the lessor is no longer receiving any benefit from the lessee under the lease, estoppel cannot apply to prevent the lessor from claiming the lease has terminated. 3 Kuntz, Oil and Gas § 43.2, p. 455-56 (1989). See 2 Kuntz, Oil and Gas § 26.14, pp. 430-31 (1989); 2 Summers, Oil and Gas § 302, p. 283 (Perm. ed. 1959); 3 Williams & Meyers, Oil and Gas Law § 604.7, pp. 88.18-19 (2009).

Accordingly, we hold the minimum royalty paid to the Palmers was not a benefit paid to them after the termination of the lease. After all, once the lease was terminated, the Palmers could have contracted with another operator to begin working on the leased land, and if the production of gas was substantial, the Palmers might have been able to receive more than the $1,000 they received annually. The Palmers are not estopped from claiming the lease terminated by its own terms. We affirm the district court's ruling on these points.

*Gallagher gave no consideration to the Palmers to sign the ratification of the lease.*

Gallagher and the Palmers both stipulated that no money was paid to the Palmers when they signed the ratification agreement. Gallagher contends that because the Palmers did not raise this issue in their petition to cancel the lease, they have waived the issue of whether consideration existed. Next, Gallagher asserts that because both the Palmers and Gallagher received benefits and suffered inconveniences here, under the ruling in *Cimarron Feeders v. Bolle*, 28 Kan. App. 2d 439, 446, 17 P.3d 957 (2001), the benefits and inconvenience amount to adequate consideration for the rat-

ification agreement. To the contrary, the Palmers assert that no consideration was given for their agreement to ratify the oil and gas lease.

First, our search of the record on appeal reveals that the Palmers did assert in their reply to Gallagher's counterclaim that the ratification was not supported by consideration. The claim is also made in the pretrial order approved by the court. Therefore, we do not believe the Palmers have waived the issue.

We note the district court used Gallagher's own admission that no monetary consideration was given to the Palmers for ratifying the lease. In contrast, the court observed that Gallagher paid a neighboring landowner $10,000 for the ratification of his lease. In addition, the district court determined that the ratification fundamentally altered the original lease by "extending its term years beyond that which the parties had agreed to" and such alteration required consideration under the ruling in *Bowersock Mills & Power Co. v. Leatherock*, 170 Kan. 455, 457, 226 P.2d 854 (1951). We must agree.

This lease had expired by its own terms in 1998. The minimum-royalty payments did not revive it, nor did they extend its primary term, as attempted by the ratification agreement. There was no secondary term with this lease because there was no oil and gas production. We see no benefit flowing to the Palmers from the signing of the ratification agreement. The district court was correct; there was no consideration for this ratification agreement and it has no legal effect. But we do take issue with some subsequent holdings by the court.

*No evidence supports the court's finding that the Palmers did not knowingly and intelligently sign the ratification agreement.*

Even though the district court, of its own volition, raised an issue about the capacity of the Palmers to agree to the lease ratification, we will address the matter according to the ruling in *Huffmier v. Hamilton*, 30 Kan. App. 2d 1163, 1167, 57 P.3d 819 (2002), *rev. denied* 275 Kan. 964 (2003). In *Huffmier*, the panel ruled that if the district court addresses an issue, an appellate court can review the issue even though the parties did not raise the matter.

We must review a district court's findings of fact to determine if those findings are supported by substantial competent evidence.

We also must decide if those findings are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). Our examination of the record reveals that there was no evidence presented by either party that the Palmers lacked the capacity to ratify this lease.

What the district court said about their capacity to contract follows:

"Mr. Gallagher is by his own admission a successful financier that has invested in oil and gas leases for many years. Mr. and Mrs. Palmer are elderly, with only high school educations, and quite feeble in mind and body. When they were approached by Mr. Gallagher's agent to sign a ratification in May, 2006, it is doubtful they had any idea of its implications. A ratification must be made knowingly and intelligently. *Ciambotti v. Decatur-St. Louis, Lupin*, 533 So.2d 1352 (La.App. 3d Cir. 1988); *United Aircraft Corp. v. Inter. Assn. of Machinists*, 161 Conn. 79, 285 A.2d 330 (1971). Here, there was no evidence to indicate that Mr. and Mrs. Palmer signed the ratification knowingly and intelligently."

From this, we conclude the district court merely relied on the appearance of the Palmers in court at the time of the trial, over 2 years after the ratification was signed. Based on this, the district court did err in determining that the Palmers lacked the capacity to enter into the ratification, because the district court's conclusions were not supported by substantial competent evidence. We move on to another problematic ruling of the court.

*The evidence does not support the court's conclusion that the ratification agreement was unconscionable.*

The basic rule is that the burden of proving whether a contract is unconscionable is on the party attacking the validity of the contract. In the absence of fraud, mistake, or duress, a party is bound by a contract entered into fairly and voluntarily. This rule applies even if the attacking party fails to read the contract, or if terms disadvantageous to the attacking party are included in the contract. *Adams v. John Deere Co.*, 13 Kan. App. 2d 489, 492, 774 P.2d 355

(1989). But if there is sufficient evidence to support a finding that a contract is unconscionable, the court may refuse to enforce it.

Here, no such evidence was given, nor did the district court rely on evidence to make its finding that the lease and its ratification were unconscionable. It appears that the court relied only on events occurring after the lease and ratification were both executed. Clearly, the district court did not focus on what took place at the time the lease and ratification were signed. The district court did not find that there was duress, fraud, or mistake by either the Palmers or Gallagher. The district court's only focus was that the ratification would have revived an already terminated lease. This fact alone does not make the contract unconscionable. All the court stated on this point is:

"It is well settled that where an agreement is so one sided that no fair minded person would view it as just, it is deemed unconscionable. This is true in cases where a document is prepared by one party having the strongest economic position and presented to the party in a weaker position, and the document contains terms that are offensive or intolerable. [Citation omitted.] Here we have a situation where Mr. and Mrs. Palmer leased 238 acres of their lands for mineral production in 1996 believing in good faith that there would be production and payment of royalties. The only thing they received since the lease terminated in 1998 was an annual check for $1,000, a payment not recognized in the terms of the lease. Enforcement of the ratification would revive a lease that died by its own terms ten (10) years ago and cause forfeiture of Mr. and Mrs. Palmers right to lease the lands to another entity on current terms. The Court will not enforce such an arrangement."

Therefore, the district court erred in finding that the lease and its ratification were unconscionable. We must reverse its ruling.

*The court had authority to grant the Palmers attorney fees.*

The law grants district courts discretion to award attorney fees in cases dealing with the release of oil and gas leases. K.S.A. 55-202 provides:

"Should the owner of such lease neglect or refuse to execute a release as provided by this act, then the owner of the leased premises may sue in any court of competent jurisdiction to obtain such release, and the owner may also recover in such action of the lessee, his or her successors or assigns, the sum of one hundred dollars as damages, and all costs, together with a reasonable attorney's fee for

preparing and prosecuting the suit, and he or she may also recover any additional damages that the evidence in the case will warrant."

Here, the Palmers properly followed the procedures set out in K.S.A. 55-201 *et seq.* when they challenged the validity of the lease. This is necessary if they intend to rely on K.S.A. 55-202 to obtain an award of attorney fees. Gallagher refused to release the lease when notified by the Palmers that it had terminated. Subsequently, the district court decided the lease had expired and awarded the Palmers attorney fees and costs. Gallagher fails to show how the district court abused its discretion by awarding attorney fees and costs to the Palmers. Therefore, we must conclude the district court did not abuse its discretion in awarding attorney fees and costs to the Palmers. But the trouble we have with the ruling is the court failed to provide any reasons for determining the amount awarded was reasonable.

The Palmers requested $36,181.25 and expenses of $1,499.89. In a separate order, the district court awarded the Palmers $100 statutory damages, $1,499.89 for expenses, and $18,500 for attorney fees. The court gave no reasons for its ruling on the fee requests. Without any explanation, the court simply cut the fee request nearly in half.

In deciding the reasonableness of an attorney fee, courts must consider the eight factors set forth in Supreme Court Rule 1.5(a) (2009 Kan. Ct. R. Annot. 460) of the Kansas Rules of Professional Conduct. The district court itself is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining their value. An appellate court is also an expert on the reasonableness of attorney fees. However, an appellate court does not substitute its judgment for that of the district court on the amount of the attorney fee award unless in the interest of justice the appellate court disagrees with the district court. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006). But in order for us to properly review the matter, we must have the reasoning of the court on the issue. We do not have that in this record; thus, we vacate the amount of the attorney fee award.

We do not address the cross-appeal since the district court must revisit the amount of attorney fees it finds reasonable. That award may be greater or less than what the court awarded before.

We affirm the ruling of the district court that the oil and gas lease in question has expired by its own terms. We also affirm the ruling of the court that the ratification agreement was ineffective and it neither revived this lease nor extended the lease beyond its primary term. Further, we affirm the court's award of attorney fees to the Palmers but we vacate the amount of the award and remand the matter for reconsideration by the court. We ask the court to consider the eight factors set out in Rule 1.5(a) when it does so and state its findings and reasoning used in making its judgment.